779 N.W.2d 328 (2010)
279 Neb. 543
NEBRASKA PUBLIC ADVOCATE, appellee and cross-appellant,
v.
NEBRASKA PUBLIC SERVICE COMMISSION, appellee and cross-appellant, and
SourceGas Distribution LLC and Knight, Inc., formerly known as Kinder Morgan, Inc., appellants and cross-appellees.
No. S-09-600.
Supreme Court of Nebraska.
March 5, 2010.
*329 Stephen M. Bruckner and Russell A. Westerhold, of Fraser Stryker, P.C., L.L.O., Omaha, and Mark A. Fahleson and Troy S. Kirk, of Rembolt Ludtke, L.L.P., Lincoln, for appellant SourceGas Distribution LLC.
Steven G. Seglin, of Crosby Guenzel, L.L.P., Lincoln, for appellant Knight, Inc.
Roger P. Cox and Jack L. Shultz, of Harding & Schultz, P.C., L.L.O., Lincoln, for appellee Nebraska Public Advocate.
Jon Bruning, Attorney General, and L. Jay Bartel for appellee Nebraska Public Service Commission.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

INTRODUCTION
SourceGas Distribution LLC (SourceGas) and Knight, Inc., formerly known as Kinder Morgan, Inc. (KM), appeal the decision *330 of the Lancaster County District Court. Both the Nebraska Public Service Commission (Commission) and the Nebraska Public Advocate (Public Advocate) cross-appeal. We affirm in part and in part reverse, and remand with directions.

FACTUAL BACKGROUND
On June 2, 2006, KM filed an application with the Commission requesting a general increase in its annual revenue requirement. In other words, KM asked for permission to raise the rates charged to its customers. The Public Advocate, an entity created by the Nebraska Legislature and appointed by the Commission to represent the interests of Nebraska citizens in matters such as the one at issue in this case,[1] intervened. At the time KM filed the application, KM was a jurisdictional utility under Nebraska law. On or about April 1, 2007, KM sold its retail distribution assets and transferred its Nebraska certificate of convenience to SourceGas. Since that time, SourceGas has been a jurisdictional utility within the meaning of state law.
Extensive discovery was had by the Public Advocate concerning this rate case. On September 1, 2006, while its application was still under consideration, KM properly placed into effect, subject to refund, interim rates.
On November 28, 2006, KM and the Public Advocate entered into a settlement regarding the rate application. That settlement entitled KM to recover an increase of $8.25 million in its annual revenue requirement beginning January 1, 2007. The Public Advocate agreed that the rates in the settlement were "just and reasonable," that KM's interim rates were "established at an overall revenue level that is less than the revenue increase" set forth in the settlement, and that "no refund [was] required." The settlement was silent as to whether KM would be required to prorate its billing when implementing the new rates.
Approximately 1 month later, on December 27, 2006, the Commission approved the settlement. That order specifically concluded that "no refund [was] due" because "the interim distribution rates paid by customers were lower than the settled and approved rates" and "[KM] did not earn more than [it] should have during the interim rate period." This order was also silent as to whether KM was required to prorate its billing. There was no appeal taken from this order. The order became final and the time to appeal ran on January 26, 2007.
In the meantime, however, on January 5, 2007, the director of the Commission's natural gas department e-mailed KM, inquiring as to whether KM would be prorating its billing when implementing the new rates. A KM representative replied to the Commission on January 9, stating that KM would not be doing so. The representative explained that such was "consistent with [KM's] tariff, past practices and implementation of rates, as they have changed over time, including the implementation of interim rates back on September 1[, 2006] in [the] rate proceeding." The Public Advocate received copies of both the January 5 and January 9 e-mails.
On July 6, 2007, the Public Advocate filed a formal complaint with the Commission. In that complaint, the Public Advocate contended that KM failed to prorate when implementing its interim and final rates in the 2006 rate case. According to the Public Advocate, the effect of the failure to prorate billing was that depending upon the customer's billing cycle, a customer *331 might have been billed at the new rates, which were effective January 1, 2007, for gas service rendered prior to that date. The Public Advocate requested that KM be required to provide refunds to customers who were charged in this manner.
The Commission dismissed the Public Advocate's complaint, contending that it was an impermissible collateral attack on the December 27, 2006, order approving the settlement. The Commission concluded:
The Formal Complaint ... was not filed by the [Public Advocate] as a direct challenge to the Commission's final Rate Case Order.... The [Public Advocate] has tried to make a distinction between the ... Formal Complaint and the ... rate case proceeding. [It] asserts the issue is one of the legality of the method employed by [KM] to implement interim and final rates under the provisions of the [State Natural Gas Regulation Act]. However, the practical effect of the Formal Complaint is to have this Commission, outside of the proceedings in the... rate proceeding, go back and re-examine the Stipulation and Settlement Agreement, and the actions of [KM] in relation to the ... rate proceeding and order.
Neither the [State Natural Gas Regulation Act], Commission rules and regulations, nor the ... Rate Case Order specifically requires proration to be used when a utility implements a rate change as the [Public Advocate] suggests. Reasonable interpretations of the [State Natural Gas Regulation Act] provisions could differ on the issue of proration and our rules and regulations and [the] Rate Case Order are silent on the implementation method required for the rate changes. In the absence of a specific rule or order, such a requirement would need to be established in the context of the rate case proceeding. For this Commission to make the determinations sought by the [Public Advocate] in the above-captioned proceeding, we would have to reconsider and re-scrutinize the... rate case proceeding and all the issues involved with that proceeding. To do so, in our opinion, would be a collateral attack of an earlier order.
The Public Advocate appealed to the Lancaster County District Court, which concluded that the Public Advocate's complaint was a collateral attack with respect to the interim rates, as the settlement notes that no refund was needed. But as to the final rates, the district court found no collateral attack:
The court notes that the Settlement and Rate Case Order does not include any specific language regarding the method of implementing the final rates that became effective on January 1, 2007. In the absence of a specific agreement, the implementation of final rates is governed by [the State Natural Gas Regulation Act] and other applicable Nebraska law.... Although the analysis may necessitate reference to the terms and conditions of the Settlement and Rate Case Order, it does not require the Commission to modify, second guess, or evaluate the legality of the terms of either of those documents.
The court then remanded the case to the Commission for a determination of whether KM was required to prorate its billing.

ASSIGNMENTS OF ERROR
On appeal, SourceGas assigns that the district court erred in (1) determining that the Public Advocate's complaint was not a collateral attack on the order ending the 2006 rate case; (2) failing to affirm the Commission's dismissal because Nebraska law does not require the prorating of billing *332 upon the implementation of rate changes; (3) failing to affirm the Commission's dismissal because KM's Commission-approved tariff required nonprorated implementation; (4) failing to affirm the Commission's dismissal because the Commission lacks the authority to grant the retroactive relief sought; and (5) failing to determine that KM, now known as Knight, was responsible for any refunds that might be owed to customers. Knight assigns that the district court erred in failing to determine the Commission lacked subject matter jurisdiction over it.
On cross-appeal, the Commission assigns that the district court erred in not finding the Public Advocate's complaint to be an impermissible collateral attack. Also on cross-appeal, the Public Advocate assigns that the district court erred in (1) affirming the Commission's conclusion that the complaint as to the interim rates was a collateral attack and (2) failing to conclude that KM could not charge interim rates for service rendered prior to September 1, 2006.

STANDARD OF REVIEW
In an appeal under the Administrative Procedure Act, an appellate court may reverse, vacate, or modify the judgment of the district court for errors appearing on the record.[2]
An appellate court reviews questions of law independently of the lower court's conclusion.[3]

ANALYSIS

Impermissible Collateral Attack.
In its first assignment of error, SourceGas argues that the district court erred in reversing the decision of the Commission dismissing the Public Advocate's complaint. SourceGas contends that the Public Advocate's complaint was an impermissible collateral attack on the 2006 rate case and should be dismissed.
When a judgment is attacked in a manner other than by a proceeding in the original action to have it vacated, reversed, or modified, or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack.[4] When the court has jurisdiction over the person and subject matter, a party to the proceeding will be bound by the judgment in the case when collaterally attacking it, even though the judgment was irregularly or erroneously entered.[5] Until such judgment is rendered void in a proper proceeding and set aside, it remains valid and binding for all purposes and cannot be collaterally attacked.[6]
In order to resolve the question of whether the Public Advocate's formal complaint was an impermissible collateral attack, this court must determine whether the issue of prorated billing upon implementation of a rate change is negotiable in a rate case. If the issue was negotiable, the Public Advocate could have raised it, but failed to raise it, at the time of the rate case and is now precluded from bringing this action. The resolution of this question requires an examination of the State Natural Gas Regulation Act[7] and *333 relevant Commission rules and regulations, and it is a question of law, which this court reviews de novo.
The Public Advocate directs us to several statutes and regulations in support of the argument that prorated billing is required by the State Natural Gas Regulation Act and therefore non-negotiable. In particular, the Public Advocate suggests that charging different customers different rates for the same gas service is a violation of § 66-1825(1), which requires rates to be "just and reasonable," and § 66-1825(2), which further prohibits a utility from "grant[ing] any unreasonable preference or advantage to any person or subject[ing] any person to any unreasonable prejudice or disadvantage." The Public Advocate maintains that KM's charging different rates based upon a billing cycle advantaged some customers while disadvantaging others.
The Public Advocate further suggests that § 66-1838(10)(b) does not permit rates to be "placed into effect" until 90 days after the adoption of final rates and that such "placed into effect" provision means those rates cannot be charged for service rendered prior to that time. The Public Advocate also notes that the Commission's own regulations with regard to billing state that "`[b]ills will be rendered monthly at the rates shown in the Company's tariff"'[8] and that the rates at issue do not change until the date set in the rate order case. The Public Advocate further contends that the settlement between it and KM specifically indicated that the final rates would not become effective until the date in the settlement, January 1, 2007. Other than the language of the statute and the regulation, the Public Advocate directs us to no authority in support of its argument.
We are not persuaded by the Public Advocate's argument. As was noted by the Commission, none of the statutes or regulations to which the Public Advocate directs us evinces a clear indication that a utility company, upon implementing a rate change, is required to prorate its billing. Nor is there any specific mention of such a requirement in the State Natural Gas Regulation Act or in any of the Commission's regulations.
The crux of the Public Advocate's argument, as noted above, is that under § 66-1838(10)(b), a rate cannot be charged for service rendered prior to the time that a rate is "placed into effect." However, we find that this language is susceptible to differing interpretations. We agree with SourceGas that the "placed into effect" language of § 66-1838(10)(b) could also mean simply that the rate in effect at the time of billing is the rate to be charged.
Nor do we agree with the Public Advocate's assertion that charging certain customers different rates violates the requirement of "just and reasonable"[9] rates and that in being so charged, certain customers are "grant[ed an] ... unreasonable preference or advantage."[10] We do recognize that the overarching basis of the Public Advocate's complaint in this case is that KM's customers should be treated equitably and that the failure to prorate billing may result in the appearance of some customers being treated differently from others. While the Public Advocate's goal is an admirable one, we note that prorated billing is also imprecise and can result in the differing treatment of individual customers.
*334 The amount due for gas service is determined by a reading of a gas meter. Such reading normally cannot provide details as to a customer's gas usage on any given day. Thus, where bills are prorated, the amounts billed at the old and new rates are simply averaged and not necessarily an accurate representation of the gas used by the customer at any given rate. We therefore conclude that to the extent some customers might be granted a preference where billing is not prorated, that preference is not "unreasonably preferential or discriminatory" within the meaning of § 66-1825(1), nor does it mean that the rates charged were not "just and reasonable."
Finally, we note that the record demonstrates that for decades, KM; its predecessor, K N Energy; and its successor, SourceGas, have not prorated billing upon the implementation of a rate increase. The Public Advocate argues that this history is irrelevant, as it refers to a prior act regulating natural gas service. While we acknowledge that the State Natural Gas Regulation Act was adopted in 2003, we disagree that such history is irrelevant. We further note that the record shows that several rate filings were made and implemented on a nonprorated basis subsequently to the 2003 passage of the act now in effect.
We conclude that as a matter of law, the issue of whether a utility must prorate its billing upon the implementation of new rates is not addressed by the applicable statutes, rules, or regulations and is therefore a proper subject of negotiation during a rate case proceeding.
We also agree with SourceGas that the Public Advocate's complaint is an impermissible collateral attack. This court has noted on more than one occasion that the doctrine of res judicata
"`is much broader in its application than a determination of the questions involved in the prior action; the conclusiveness of the judgment in such case extends not only to matters actually determined, but also to other matters which could properly have been raised and determined therein. The rule applies to every question relevant to and falling within the purview of the original action, in respect to matters of both claim or grounds of recovery, and defense, which could have been presented by the exercise of diligence.'"[11]
The issue of whether prorated billing was necessary could have been discussed and agreed upon at the time of the 2006 rate case. We conclude that the failure to do so precludes the raising of that issue now.
We therefore agree with the Commission's dismissal of the Public Advocate's complaint, and reverse the decision of the district court with respect to the final rates and remand this cause with directions to reinstate the Commission's dismissal of the formal complaint.

Remaining Issues on Appeal and Cross-Appeal.
Because we dismiss the Public Advocate's complaint, we need not address the remainder of SourceGas' assignments of error. Nor do we need to reach the Commission's cross-appeal.
In its cross-appeal, the Public Advocate contends that the district court erred in concluding that its complaint was a collateral attack as to the interim rates. The interim rates in this case were implemented on a nonprorated basis on September 1, 2006. The final settlement in the rate case was reached on November 28, nearly 3 *335 months after the interim rate implementation. Given that the rates had been implemented for several months prior to the settlement and the approval of that settlement, we determine, in conformity with the above analysis, that the Public Advocate should have known that the interim rates were not implemented on a prorated basis. Because the Public Advocate should have known this, we conclude that the complaint as to the interim rates was also an impermissible collateral attack and should also be dismissed. We therefore affirm the district court's dismissal of the Public Advocate's complaint with respect to the interim rates.

CONCLUSION
The Public Advocate's formal complaint was an impermissible collateral attack on the 2006 rate case order and should be dismissed. Accordingly, we affirm in part, and in part reverse the decision of the district court and remand this cause with directions to reinstate the Commission's dismissal of the complaint.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.
NOTES
[1] Neb.Rev.Stat. § 66-1830 (Reissue 2003).
[2] Neb.Rev.Stat. § 84-918(3) (Reissue 2008).
[3] R & D Properties v. Altech Constr. Co., 279 Neb. 74, 776 N.W.2d 493 (2009).
[4] State v. Keen, 272 Neb. 123, 718 N.W.2d 494 (2006).
[5] Id.
[6] Id.
[7] Neb.Rev.Stat. § 66-1801 to 66-1857 (Reissue 2003).
[8] Brief for appellee Public Advocate at 22. See 291 Neb. Admin. Code, ch. 9, § 015.01 (2006).
[9] § 66-1825(1).
[10] § 66-1825(2).
[11] State v. Keen, supra note 4, 272 Neb. at 129-30, 718 N.W.2d at 500. Accord Norlanco, Inc. v. County of Madison, 186 Neb. 100, 181 N.W.2d 119 (1970).