#25334-a-SLZ

**2010 SD 69**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

AMERICAN FAMILY INSURANCE GROUP,                    Plaintiff and Appellee,

    v.

HEATHER ROBNIK,                                                         Defendant and Appellant,

    and

SHIRLEY HUNTER,                                                        Defendant.

\* \* \* \*
APPEAL FROM THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JOHN J. DELANEY
Judge

\* \* \* \*

DOUGLAS M. DEIBERT
Cadwell, Sanford, Deibert & Garry, LLP          Attorneys for plaintiff
Sioux Falls, South Dakota                                  and appellee.

MICHAEL A. WILSON of
Barker Wilson Law Firm, LLP                          Attorneys for defendant
Rapid City, South Dakota                                  and appellant.

\* \* \* \*

ARGUED MARCH 23, 2010

OPINION FILED **08/11/10**

ZINTER, Justice.

[¶1.] American Family Insurance initiated this declaratory action to determine whether its homeowner's policy covered damages awarded against its insured in an underlying tort action for negligent misrepresentation. The circuit court in the underlying action found that the damages were caused by negligent acts. Notwithstanding those findings, the circuit court in the declaratory action concluded there was no coverage because the misrepresentations were intentional and because there were no causally related damages for which there was coverage under the policy. We affirm the judgment because there was no dispute of fact that allegedly negligent acts caused expected damages; the expected damage issue was not and could not have been tried in the underlying tort action; and, under Robnik's own line of authorities, negligent misrepresentation resulting in expected damages is not an accident/occurrence for which there is coverage under the policy.

*Facts and Procedural History*

[¶2.] Shirley Hunter owned a home in Rapid City. In connection with her sale of the home, Hunter completed a property disclosure statement as required by SDCL ch 43-4. In the disclosure statement, Hunter answered "No" to the following question: "Are you aware of any problems with the sewer blockage or backup, past or present?" Hunter also indicated that the "plumbing and fixtures" were "working," and that the "sewer system/drains" were "working." After reviewing the disclosure statement, Heather Robnik purchased the home.

[¶3.] Approximately two years prior to the sale, Hunter had hired a plumbing contractor to repair a sewer blockage in the home. The contractor discovered defects in the sewer line. Rather than fixing the problem, Hunter had

the shower drain in the basement capped. She also had the toilet drain capped. This information was not disclosed to Robnik, and it conflicted with the representations in the disclosure statement.

[¶4.]     After purchasing the home, Robnik uncapped the shower and toilet drains and began using those facilities. Less than a year after closing, Robnik experienced sewage back up, including standing water. In a second incident, Robnik experienced a basement sink full of sewage and feces.

[¶5.]     Robnik subsequently initiated the underlying action against Hunter for personal injury and property damage. Robnik's action was initially premised on alternative theories of negligence and deceit. Hunter did not appear, and American Family intervened to provide a defense. At the conclusion of a trial to the court, Robnik dismissed her claim for deceit and all allegations of intentional misconduct. Circuit Judge Trimble entered findings of fact that: Hunter negligently completed the disclosure statement; her negligence proximately caused Robnik property damage and emotional distress accompanied by bodily injury; and, Hunter committed the tort of negligent misrepresentation.

[¶6.]     Hunter's homeowner's insurance policy provided liability coverage for bodily injury and property damage caused by an "occurrence." An occurrence was defined as: "an accident, including exposure to conditions, which, results during the policy period, in: a. bodily injury; or b. property damage." The term "accident" was not defined in the policy. The policy also contained an intentional acts exclusion, which provided:

> Intentional Injury. We will not cover bodily injury or property damage caused intentionally by or at the direction of any insured even if the actual bodily injury or property damage is

different than that which was expected or intended from the standpoint of any insured.[1]

[¶7.] After entry of the judgment in the underlying action, American Family and Robnik filed cross motions for summary judgment in the already pending declaratory action. Judge Delaney denied Robnik's motion for summary judgment and granted American Family's motion. Notwithstanding Judge Trimble's findings that Hunter's misrepresentations were negligent, Judge Delaney found that the acts were intentional and there was no coverage under the intentional acts exclusion.[2]

[¶8.] On appeal, Robnik contends that in light of American Family's participation in the underlying action, *res judicata* prevented the declaratory court from recasting Hunter's acts as intentional rather than negligent. Robnik also contends that Hunter's negligent misrepresentation was an accident/occurrence triggering coverage under the policy.[3]

---

1. The policy also contained a contract damage exclusion. Because we conclude there was no coverage under the accident/occurrence provision, we need not address the arguments on appeal regarding coverage under the contract exclusion.

2. Judge Delaney alternatively concluded that the type of damages caused by this incident was not covered under the policy. It is not clear whether this ruling was based on the contract damage exclusion or the cases disallowing recovery for economic losses. *See infra*, n. 6. Because we are affirming on the accident/occurrence issue, we need not address the parties' arguments on appeal regarding Judge Delaney's alternative ruling.

3. Robnik also presented other arguments seeking affirmative relief and responding to American Family's defenses. Because Robnik cannot prevail on the accident/occurrence issue, we need not address Robnik's other appellate arguments.

*Decision*

*Accident/Occurrence*

[¶9.] To be a covered "occurrence," Hunter's misrepresentations had to have been an "accident" within the meaning of the policy. This issue has been considered by numerous courts, resulting in a split of authority. One author has summarized the issue and the two most often stated views:

> Standard language in many policies of liability insurance provides coverage for bodily injury or property damage caused by an "occurrence." "Occurrence" is usually defined as an "accident," but the term "accident" is itself rarely defined. Courts have differed over whether negligent misrepresentation can constitute an "accident" or "occurrence" under a policy of liability insurance so as to give rise to an insurer's duty to defend or indemnify an insured. In Sheets v. Brethren Mut. Ins. Co. (1996) 342 Md 634, 679 A2d 540, 58 ALR5th 883, for example, the court held that negligent misrepresentation would be treated like other forms of negligence that are covered as "accidents" if the insured does not expect or foresee the resulting damage. Other courts have held that negligent misrepresentation is not an "accident" under a policy, because the insured intends to induce reliance on the statement[4] or because the nature of negligent misrepresentation is that of an intentional act.

H. Brent Brennenstuhl, Annotation, Negligent Misrepresentation as "Accident" or "Occurrence" Warranting Insurance Coverage, 58 ALR5th 483, 483 (1998). We have not had occasion to consider the issue.

---

4. In South Dakota, intent to induce reliance is an element of negligent misrepresentation. The tort occurs "whenever one party makes (1) a misrepresentation, (2) without reasonable grounds for believing the statement to be true, (3) with the intent to induce a particular action by the other party, and the other party (4) changes position with actual and justifiable reliance on the statement, and (5) suffers damage as a result." Ehresmann v. Muth, 2008 SD 103, ¶ 21, 757 NW2d 402, 406 (quoting Fisher v. Kahler, 2002 SD 30, ¶ 10, 641 NW2d 122, 126-27).

[¶10.]	Robnik relies on *Sheets v. Brethren Mut. Ins. Co.*, 342 Md 634, 657, 679 A2d 540, 551 (1996). *Sheets* concluded that notwithstanding the intent to induce reliance element, negligent misrepresentation is an accident/occurrence if "the resulting damage is an event that takes place without one's foresight or expectation."[5] *See also* Aetna Cas. & Surety Co. v. Metro. Baptist Church, 967 FSupp 217, 223 (SDTex 1996) (concluding that under Texas law, negligent misrepresentation may be an accident if the resulting injury is unexpected or unintended).[6] The dissent relies on *City of Carter Lake v. Aetna Cas. & Sur. Co.*,

---

5.	*Sheets,* however, explicitly rejected a reasonable foreseeability requirement (often referred to as the natural and probable consequences element) as unduly limiting the applicability of general liability policies:

> [E]ven . . . those courts which follow [the reasonable foreseeability requirement recognize] . . . that it so greatly restricts the insurer's liability as to render the policy valueless or even meaningless, and denies coverage for what is the predicate of any likely liability against the insured. As one court has pointed out, the insured himself is not liable where damage or injury is the unforeseeable result of his negligence; and where the damage or injury is foreseeable, so that the insured is liable, his insurer is not liable.

Sheets v. Brethren Mut. Ins. Co., 342 Md 634, 647-648, 679 A2d 540, 546 (1996) (citations omitted). *See also* dissent, *infra* ¶ 28 (citing City of Carter Lake v. Aetna Cas. & Sur. Co., 604 F2d 1052, 1058 (8thCir 1979) for the same proposition).

6.	American Family relies on the opposing view "that negligent misrepresentation is not an 'accident' under a policy, because the insured intends to induce reliance on the statement or because the nature of negligent misrepresentation is that of an intentional act." *See Brennenstuhl*, 58 ALR5th at 483. American Family also points out that other courts have found no coverage, concluding that negligent misrepresentation is a species of fraud. *See e.g.*, Miller v. Western General Agency, Inc., 49 CalRptr2d 55, 58 (CalCtApp 1996) (applying rationale that because negligent misrepresentation requires intent to induce reliance, it is a subspecies of fraud and therefore not covered as an "occurrence"). American Family finally

(continued . . .)

604 F2d 1052, 1058 (8th Cir 1979), a harmonious decision applying the same definition as *Sheets*; i.e. "whether a result is 'expected' as a matter of probability." *See id.* In fact, *Sheets* "agrees with the reasoning of the Eighth Circuit in *Carter Lake.*" *Sheets*, 342 Md at 653. Ultimately, as explained below, we do not decide which view or specific definition to adopt because Robnik cannot establish an accident/occurrence as a matter of law under *Sheets's* or *Carter Lake's* definition of the unexpected damage rule. Comparing and contrasting *Sheets* and *Carter Lake* demonstrates this conclusion.

[¶11.]      In applying the unexpected damage rule, *Sheets* found coverage for negligent misrepresentation in connection with the sale of property only because that seller had never before experienced a problem with the sewer/septic system that the seller had represented was in good working order. The Maryland Court of Appeals observed that when the problem causing damage has not previously been encountered by the seller, the damages may be considered "[un]anticipated" and the

---

(continued . . .)
> points out that yet other courts have found no coverage when there has been economic loss in the sense that the property is not as represented. "It has been recognized that courts 'are virtually unanimous in their holdings that damages flowing from misrepresentation and/or fraud have no basis [as] property damage; rather, the only cognizable damages from such torts are economic and contractual in nature and as such do not fall within the scope of coverage afforded by [homeowner's] policies[.]'" Aluise v. Nationwide Mut. Fire Ins. Co., 625 SE2d 260, 268 (WVa 2005). *See also* Nationwide Property & Casualty v. Comer, 559 FSupp2d 685, 691-92 (SD WVa 2008) (adopting rationale that negligent and intentional misrepresentations do not cause property damage when the misrepresentation concerns existing defects in property).

misrepresentation may therefore be considered to have been an accident. The court explained:

> It is conceivable that [the sellers] *never experienced a problem with the system* while they were living on the farm with their two children and therefore, at the time they represented that the system was in good working order, did not anticipate that the [buyer] would encounter any difficulties. *We therefore hold* that the resulting damage fits within our definition of accident *because it was an event that may have taken place without the [sellers'] foresight or expectation.*

*Id*. at 657-58 679 A2d 540 (emphasis added). In contrast, *Carter Lake* held that where an insured has had one prior sewage backup, "floodings subsequent to the first incident are not unexpected and thus [are] not accidents or occurrences as those terms are used in the insurance policy." *Carter Lake*, 604 F2d at 1059.

[¶12.]     The parties in this case agree that there are no disputes of fact regarding any coverage issue under the policy. Under those undisputed facts, Robnik cannot meet the coverage requirements of *Sheets* or *Carter Lake*. In contrast to the situation in *Sheets* but like the facts in *Carter Lake,* there is no dispute that Hunter previously had sewage blockage and knew of the defective sewer line. Further, like the insured in *Carter Lake,* there is no dispute that Hunter failed to repair the defect. Instead, Hunter capped the sewer drains and discontinued use of the basement shower and toilet.[7] Therefore, under both *Sheets* and *Carter Lake*, Hunter must be held to have expected that Robnik would use the basement toilet and shower thereby experiencing the unrepaired sewer damage. As

---

7.     At the summary judgment hearing the court asked the question: "They had problems and they capped it. They did not disclose that. Okay." Robnik's counsel responded: "That's all true."

*Carter Lake* stated, the failure to repair a prior sewage backup "clearly" creates a "substantial probability" of another sewage backup in the future. *Id.* Accordingly, in the words of *Carter Lake,* Robnik's sewage backups "subsequent to [Hunter's incident] were not unexpected and thus were not accidents or occurrences as those terms were used in the insurance policy." *See id.* Thus, if we were to follow either the *Sheets* or the *Carter Lake* decision, there is no coverage for Robnik's incident.

[¶13.] The dissenters would reverse and remand for the circuit court to address and make a "finding" whether the damages would have been anticipated within the meaning of *Carter Lake. See* dissent*, infra* ¶ 27. But both parties moved for summary judgment arguing that there was no dispute of fact regarding the coverage issues. And, on appeal, neither party has requested a remand to circuit court. Both parties agree that we should decide this issue as a matter of law on the record before us. That record includes an agreement that Hunter had previously experienced a backup but capped the drains instead of fixing the problem. Under those facts, the dissent's own authority concludes that such incidents are not unexpected because "after the first backup," there is a "substantial probability" of another backup unless the problem is repaired. *Carter Lake*, 604 F2d at 1059. Therefore, under *Carter Lake*, Hunter's knowledge of the previous sewer issue precludes Robnik's damages from being "unexpected." When the entire record is devoid of a genuine issue of material fact, summary judgment is appropriate. Fisher v. Kahler, 2002 SD 30, ¶ 5, 641 NW2d 122, 124-25. As noted in another case, "to . . . reverse and remand a grant of summary judgment where there are no genuine issues of material fact is somewhat illogical." Tipton v. Town of Tabor, 1997 SD 96 n29, 567 NW2d 351 n29 (Sabers, J., dissenting). Indeed, this Court

routinely determines insurance coverage issues on summary judgment when there are no disputes of fact.  *See e.g.*, Hoglund v. Dakota Fire Ins., 2007 SD 123, ¶ 28, 742 NW2d 853, 860; Schulte v. Progressive Northern Ins. Co., 2005 SD 75, ¶¶ 8-9, 699 NW2d 437, 440; Am. Family Mut. Ins. Group v. Kostaneski, 2004 SD 114, ¶ 24, 688 NW2d 410, 415; State Cement Plant Comm'n v. Wausau Underwriters Ins. Co., 2000 SD 116, ¶ 24, 616 NW2d 397, 407; Alverson v. Northwestern Nat'l Cas. Co., 1997 SD 9, ¶ 15, 559 NW2d 234, 237; DeSmet v. Gibson, 1996 SD 102, ¶ 10, 552 NW2d 98, 101; Econ. Aero Club, Inc., v. Avemco Ins. Co., 540 NW2d 644, 646 (SD 1995); Am. Family Mut. Ins., Co., v. Elliot, 523 NW2d 100, 103-04 (SD 1994); Am. Family Mut. Ins. Co., v. Purdy, 483 NW2d 197, 201 (SD 1992); Dairyland v. Wyant, 474 NW2d 514, 516 (SD 1991); Klatt v. Cont'l Ins. Co., 409 NW2d 366, 370-71 (SD 1987); Great Cent. Ins. Co., v. Roemmich, 291 NW2d 772, 775 (SD 1980).

*Res Judicata*

[¶14.]    Robnik, however, relying upon the doctrine of *res judicata*, argues that American Family's accident/occurrence defense may not be raised in the declaratory action because coverage issues either were or could have been litigated in the underlying tort action.  This Court reviews *de novo* a circuit court's application of the doctrine of *res judicata*.  White v. Bain, 2008 SD 52, ¶ 17, 752 NW2d 203, 208.

[¶15.]    "Res judicata consists of two preclusion concepts:  issue preclusion and claim preclusion."  Christians v. Christians, 2001 SD 142, ¶ 46, 637 NW2d 377, 387 (Konenkamp, J., concurring specially) (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 US 75, 77 n1, 104 SCt 892, 79 LEd2d 56 (1984)).  As the Supreme Court explained in *Migra*:

> The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years. These effects are referred to collectively by most commentators as the doctrine of "res judicata." *See* Restatement (Second) of Judgments, Introductory Note before ch. 3 (1982); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4402 (1981). Res judicata is often analyzed further to consist of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. *See* Restatement, *supra,* § 27. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. . . .

*Migra,* 465 US at 77 n1, 104 SCt at 894. *See also Christians*, 2001 SD 142, ¶ 46, 637 NW2d at 387.

[¶16.]     Robnik first invokes collateral estoppel, the issue preclusion effect of *res judicata.* She argues that Judge Delaney erred in relitigating the question whether Hunter's misrepresentations were negligent or intentional. Robnik points out that Judge Trimble entered specific findings that Hunter's misrepresentations were merely negligent and those findings were not appealed. Even though Judge Delaney failed to give preclusive effect to Judge Trimble's findings,[8] collateral estoppel did not preclude American Family's accident/occurrence defense in this case.

---

8.     For the reasons set forth in *St. Paul Fire and Marine Ins. Co. v. Engelmann*, 2002 SD 8, ¶ 18, 639 NW2d 192, 200-01, collateral estoppel does not generally apply when an insurer has only appeared under its duty to defend. We do not apply *St. Paul Fire and Marine* on the claim preclusion issue because American Family conceded at the circuit court level that collateral estoppel precluded relitigation of the findings of fact and conclusions of law entered in the underlying tort trial.

[¶17.]	Robnik relies on four findings entered by Judge Trimble in the underlying action. Those findings were that:

1.	Defendant negligently completed a Seller Property Disclosure Statement on December 16, 2003, concerning sewer blockage and Defendant's knowledge thereof.
2.	Defendant negligently failed to correct misstatements contained within that Seller Property Disclosure Statement concerning sewer blockage and Defendant's knowledge thereof.
3.	Defendant negligently failed to amend the Seller Property Disclosure Statement at any time prior to closing of the property on February 18, 2004.
4.	The Defendant's negligent misrepresentation was a proximate cause of damages sustained by the Plaintiff.

As Robnik correctly points out, the first three findings indicate that Hunter's misrepresentations were negligent rather than intentional acts, and the fourth finding indicates that Hunter's negligent acts caused Robnik's damages. Notably, however, there was no finding in the underlying action relating to the fact necessary for this event to be an accident/occurrence under the *Sheets/Carter Lake* view; *i.e.* that Robnik's damages would not have been incurred without Hunter's foresight or expectation.

[¶18.]	That omission is significant because issue preclusion only bars "a point [that] was actually and directly in issue in a former action and was judicially passed upon and determined by a domestic court of competent jurisdiction. . . ." Sodak Distributing Co. v. Wayne, 77 SD 496, 502, 93 NW2d 791, 794 (1958). In this case, Judge Trimble made no finding that Robnik's damages would have been incurred without Hunter's foresight or expectation. Because that issue was not actually litigated in the underlying action, collateral estoppel, the issue preclusion aspect of *res judicata,* did not bar American Family's accident/occurrence defense in this declaratory action.

[¶19.] So also, the claim preclusion aspect of *res judicata* did not bar American Family's defense. Concededly, claim preclusion not only "precludes relitigation of issues previously heard and resolved; it also bars prosecution of claims that could have been raised in the earlier proceeding, even though not actually raised." Lee v. Rapid City Area Sch. Dist., No. 51-4, 526 NW2d 738, 740 (SD 1995). Therefore, if American Family could have raised the issue of whether the damages were expected, it would have been precluded from raising the accident/occurrence defense in the declaratory action. "When a party to litigation fails to develop all of the issues and evidence available in a case, the party is not justified in later trying the omitted issues or facts in a second action based on the same claim." *Id.*

[¶20.] But to invoke the claim preclusive aspect of *res judicata,* there must have been "a full and fair opportunity to litigate the issues in the prior proceeding." People ex. rel. L.S., 2006 SD 76, ¶ 22, 721 NW2d 83, 90. And here, the question whether the damages were anticipated could not have been litigated in this underlying action because that question was not relevant. The question of anticipated damages was irrelevant because the measure of damages in a tort action "is the amount which will compensate [the plaintiff] for all the detriment proximately caused . . ., *whether it could have been anticipated or not.*" SDCL 21-3-1 (emphasis added). Because Robnik's own authorities require unanticipated damages, an issue that was irrelevant in the underlying action, the claim preclusion aspect of *res judicata* did not bar American Family's defense in this action. *See generally* Murray v. Crystex Composites, LLC, 618 FSupp2d 352, 357 (DNJ 2009) ("The bar of claim preclusion applies not only to all matters litigated and

-12-

determined by such judgment but also as to all *relevant* issues which could have been presented[.]" (internal quotations and citations omitted) (emphasis added)); Nebraska Pub. Advocate v. Nebraska Pub. Serv. Com'n, 779 NW2d 328, 334 (Neb 2010) (noting that although *res judicata* requires preclusive effect for issues that could have been raised, the rule applies to questions "*relevant to* and falling within the purview of the original action[.]" (emphasis added)).

[¶21.]     More importantly, the preclusive effects of *res judicata* do not apply in this type of situation where the insurer participated under its duty to defend. As we have previously noted, when the insurer participates under its duty to defend, the insurer must "defend the insured without regard to the insurer's interest." St. Paul Fire and Marine Ins. Co. v. Engelmann, 2002 SD 8, ¶ 18, 639 NW2d 192, 201 (quoting Restatement [Second] of Judgments § 58 cmt. a). This creates a conflict of interest for the insurer. "Hence the usual rule that an [insurer] is precluded by the determination of issues which he litigates on behalf of an [insured] stated in [Restatement (Second) of Judgments] § 57, should not apply to an [insurer] who defends, under the compulsion of an independent duty to defend, an [insured] with whom he has a conflict of interest." *Id*. ¶ 18, 639 NW2d 192 at 200. Therefore, claim preclusion did not bar consideration of the expected damage issue in American Family's declaratory action.

[¶22.]     For the foregoing reasons, we conclude that neither effect of *res judicata* barred American Family's accident/occurrence defense in this action. Further, the material facts in the declaratory action are undisputed. Hunter had experienced prior sewer blockage, and she capped the shower and sewer drains rather than repairing the defective sewer line in her home. Because she had

previously experienced the problem but declined to have it repaired, both Robnik's and the dissent's authorities do not permit coverage. *See Sheets,* 342 Md at 657-58, 679 A2d at 552 (concluding coverage was available because there were no prior problems); *Carter Lake,* 604 F2d at 1059 (concluding that because the insured declined to repair the problem after the first incident, any subsequent sewage backups "were not unexpected and thus were not accidents or occurrences as those terms were used in the insurance policy"). Accordingly, Hunter's negligent misrepresentation cannot be an accident/occurrence, and the declaratory court did not err in granting American Family's motion for summary judgment. Although the declaratory court entered no conclusion of law on the accident/occurrence issue, we affirm summary judgment if the circuit court was correct for any reason. A-G-E Corp. v. State, 2006 SD 66, ¶ 13, 719 NW2d 780, 785. That is especially appropriate here where there are no disputes of fact regarding the alleged accident/occurrence.

[¶23.] Affirmed.

[¶24.] GILBERTSON, Chief Justice, and SEVERSON, Justice, concur.

[¶25.] MEIERHENRY, Justice, and SABERS, Retired Justice, dissent.

[¶26.] SABERS, Retired Justice, sitting for KONENKAMP, Justice, disqualified.

MEIERHENRY, Justice (dissenting).

[¶27.] I respectfully dissent. We all agree that the circuit court erroneously decided this case on the policy's exclusions, i.e. intentional conduct and contract. Because the circuit court did not address or make a finding on whether the events

constituted an occurrence or accident that was covered under the terms of the policy, I would reverse and remand with directions on what definition to apply.

[¶28.]    The majority opinion does not clearly state which definition of "occurrence" or "accident" this Court is adopting for future reference. I submit that we adopt the Eighth Circuit's definition discussed in *City of Carter Lake v. Aetna Cas. & Sur. Co.*, 604 F2d 1052 (8th Cir 1979). The issue in *Carter Lake* was whether the City's insurance policy covered sewage backup. Aetna argued that some of the sewage backups "were not occurrences or accidents as those terms [were] used in the policy because the [ ] backups were 'expected.'" *Id.* at 1056. The Eighth Circuit rejected Aetna's "attempt[ ] to equate expected with reasonable foreseeability." *Id.* The Eighth Circuit reasoned:

> To adopt Aetna's interpretation that an injury is not caused by accident because the injury is reasonably foreseeable would mean that only in a rare instance would the comprehensive general liability policy be of any benefit to Carter Lake. Enforcement of the policy in this manner would afford such minimal coverage as to be patently disproportionate to the premiums paid and would be inconsistent with the reasonable expectations of an insured purchasing the policy. *See* 7A J. Appleman, *Insurance Law and Practice* § 4493, at 16 n26 (1972). Under Aetna's construction of the policy language if the damage was foreseeable then the insured is liable, but there is no coverage, and if the damage is not foreseeable, there is coverage, but the insured is not liable. This is not the law. The function of an insurance company is more than that of premium receiver.

*Id.* at 1058.

[¶29.]    The Eighth Circuit indicated that the question is "whether a result is 'expected' as a matter of probability" and rejected the concept "that a result is expected . . . simply because it was reasonably foreseeable." *Id.* This does not mean that all negligent acts are covered. *Id.* at 1058-59. The Eighth Circuit applied the

term "expected" to mean "that the actor knew or should have known that there was a substantial probability that certain consequences will result from his actions." *Id.* That determination is based on the totality of the circumstances in each case. *Id.* The Eighth Circuit explained:

> If the insured knew or should have known that there was a substantial probability that certain results would follow his acts or omissions then there has not been an occurrence or accident as defined in this type of policy when such results actually come to pass. The results cease to be expected and coverage is present as the probability that the consequences will follow decreases and becomes less than a substantial probability. *See* R. Keeton, *Basic Text on Insurance Law* § 5.4(c), at 298-300 (1971).

*Id.* at 1059.

[¶30.]        The Eighth Circuit further noted that substantial probability is a matter of the degree of expectability:

> The difference between "reasonably foreseeable" and "substantial probability" is the degree of expectability. A result is reasonably foreseeable if there are indications which would lead a reasonably prudent man to know that the particular results could follow from his acts. Substantial probability is more than this. The indications must be strong enough to alert a reasonably prudent man not only to the possibility of the results occurring but the indications also must be sufficient to forewarn him that the results are highly likely to occur.

*Id.* n4. The significance of *Carter Lake* is its rationale and analysis of what "expected" means when determining whether there is insurance coverage for "accidents." By adopting the Eighth Circuit's rationale and definition, this Court would provide a workable standard for the courts of our state in future cases where "accident" is undefined in the policy.

[¶31.]        Based on the facts of that case, *Carter Lake* ultimately determined that the sewage backups that occurred after the first incident "were not unexpected and

thus were not accidents or occurrences as those terms were used in the insurance policy." *Id.* In the case before us, the circuit court did not decide whether "the insured knew or should have known that there was a substantial probability that certain results would follow [her] acts or omissions." *Id.* The circuit court did not consider whether Hunter knew or should have known that there was a substantial probability that Robnik would uncap the basement sewer and have sewage backup as a result of Hunter's declaration on the real estate disclosure form. Under *Carter Lake,* Hunter had to have been "forewarn[ed] that the results [were] highly likely to occur." *Id.* Neither the parties nor the circuit court addressed this issue. The circuit court, instead, decided that Hunter's conduct was not covered by insurance because it was intentional or contractually excluded. Consequently, the circuit court did not determine whether Hunter's action constituted an occurrence or accident that was covered under the policy's terms.

[¶32.] Because of the split of authority on the definition of "occurrence" or "accident" and lack of precedent from this Court, it seems reasonable to remand this case given the inherently factual determination whether there is a substantial probability that a person's actions will result in harm. Thus, I would remand this case with instructions to apply *Carter Lake's* definition of "accident."

[¶33.] SABERS, Retired Justice, joins this dissent.