#25525, #25610-aff in pt, rev in pt & rem-DG

**2010 S.D. 103**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
* * * *

(#25525)

JAY E. LINK,                                        Plaintiff and Appellant,

v.

L.S.I., INC., a South Dakota
Corporation, JOHN E. LINK,
TROY J. LINK, JOHN A. HERMEIER,
LAWRENCE J. JARVELA, TERRY L.
SMITH, DOUGLAS WALZ and
JOHN DOE DEFENDANTS 1-5,            Defendants and Appellees.

* * * *

(#25610)

JAY E. LINK,                                        Plaintiff and Appellee,

v.

L.S.I., INC., a South Dakota
Corporation, JOHN E. LINK,
TROY J. LINK, JOHN A. HERMEIER,
LAWRENCE J. JARVELA, TERRY L.
SMITH, DOUGLAS WALZ and
JOHN DOE DEFENDANTS 1-5,            Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
JERAULD COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JON R. ERICKSON
Judge

* * * *

ARGUED NOVEMBER 16, 2010

OPINION FILED **12/29/10**

JON C. SOGN
LEE A. MAGNUSON
DANA VAN BEEK PALMER of
Lynn, Jackson, Shultz and Lebrun, PC
Sioux Falls, South Dakota

Attorneys for plaintiff and
appellant Jay E. Link (#25525)
For Appellee (#25610).


BRIAN KEENAN
MICHAEL J. APRAHAMIAN of
Foley & Lardner, LLP
Milwaukee, Wisconsin

Attorneys for plaintiff and
appellant Jay E. Link (#25525)
For Appellee (#25610).


TIM R. SHATTUCK of
Woods, Fuller, Shultz & Smith, PC
Sioux Falls, South Dakota

Attorneys for defendants and
appellants, L.S.I., Inc., et al.
(#25610)
For Appellee (#25525).


BRIAN P. NORTON
MICHAEL D. FREEBORN
MICHAEL P. KORNAK
ANDREW C. NORDAHL of
Freeborn & Peters, LLP
Chicago, Illinois

Attorneys for defendants and
appellants, L.S.I., Inc., et al.
(#25610)
For Appellee (#25525).

GILBERTSON, Chief Justice

[¶1.] Jay Link petitioned for judicial dissolution of L.S.I., Inc. (LSI). The circuit court denied the petition and granted LSI's petition to buy out Jay's shares at a "fair value." Jay appeals the valuation of his shares, the condition of the payments, and the dismissal of his remaining claims. We affirm in part, reverse in part, and remand. LSI filed a later appeal, challenging the interest awarded on the buy-out. We conclude the circuit court did not issue a final order reviewable on appeal.

**FACTS**

[¶2.] Jack Link and his sons, Jay and Troy, owned various companies that produced and distributed meat and cheese snacks. Link Snacks, a Wisconsin corporation, was founded and owned by Jack. It is the sole customer of LSI, a South Dakota corporation located in Alpena that produces snack products pursuant to Link Snacks' specifications. L.S.I., Inc.-New Glarus is another Wisconsin corporation that makes products for Link Snacks. Jay was employed at LSI, Link Snacks, and LSI-New Glarus. After years of conflict with Jack and Troy, Jay agreed to terminate his employment with the companies. The parties were unable to negotiate a buy-out of Jay's shares. In September 2005, Link Snacks, Jack, and Troy filed an action in Wisconsin to, in part, enforce buy-out agreements for the Wisconsin companies. The complaint was amended, alleging Jay breached fiduciary duties. Jay filed a counterclaim alleging Jack, Troy, and other officers and directors of the Link companies breached fiduciary duties. On November 17, 2005, Jay filed an action in South Dakota seeking to dissolve LSI and recover damages from LSI

directors for breach of fiduciary duties. In March 2006, the South Dakota action was stayed pending disposition of the Wisconsin action. On November 17, 2006, LSI filed an election to purchase Jay's shares under SDCL 47-1A-1434 in an effort to prevent dissolution.

[¶3.]        As part of the Wisconsin action, the parties entered into a stipulated order regarding appraisal of various Link companies. The agreed appraisal process for Jay's shares involved three appraisers, one selected by Jay, one by the Link companies, and a neutral appraiser. The appraisers were ordered to determine the "fair market value" of Jay's shares in LSI, that is, "the price which a willing buyer would pay a willing seller for such shares." They were also ordered to determine the "fair value" or the undiscounted, proportionate value of Jay's shares in LSI, as a going concern, as of December 31, 2005. As part of the process, each appraiser wrote a preliminary report that was exchanged with the other appraisers. They discussed each other's conclusions. The neutral appraiser originally valued Jay's shares in LSI at $21,000,000. However, after discussing the amount with the others, LSI's appraiser convinced him that the value should be lower to account for the fact that LSI only had one customer, which is an extremely high customer concentration. This fact lowered the undiscounted "fair value" amount of Jay's LSI shares to $16,550,000 in the final report, which was determined by a majority vote of the appraisers. The "fair market value" of Jay's shares in LSI was $11,200,000.

[¶4.]        After years of discovery and waiting for reports, the Wisconsin court conducted a three-phase jury trial in May 2008. The jury in the Wisconsin action found that Troy and Jay each owned 50% of LSI, making both equal shareholders.

-2-

The jury also found that Jay had breached fiduciary duties to LSI both while employed and after he had left. The jury found that the four directors sued in the action, two of whom were also LSI directors, had not breached any duties to Jay, but that Jack and Troy had. Finally, the jury found that Jay was not oppressed and the court denied Jay's petition for dissolution of the Wisconsin corporations. Specific performance of the Wisconsin companies' buy-out agreements was ordered. Notably, there was no buy-out agreement for LSI. The Wisconsin court entered a final judgment on October 2, 2008.

[¶5.] LSI noticed a hearing to lift the stay in the South Dakota action on October 16, 2008, and to proceed with its election to purchase Jay's shares in LSI. Jay agreed to the stay being lifted but argued the motion to proceed with the election was untimely. The circuit court rejected Jay's argument and set a hearing for May 2009 to determine the "fair value" of Jay's shares under SDCL 47-1A-1434.3.

[¶6.] At the hearing, the parties presented extensive expert testimony from the party appraisers and neutral appraiser in the Wisconsin action, in addition to detailed valuation reports. On May 15, 2009, the circuit court issued a Memorandum Decision, in which it found that LSI was a stand-alone corporation, separate from the Wisconsin Link corporations; that the appropriate date for determining the "fair value" of Jay's shares was December 31, 2005; that Jay was entitled to "fair value" of his shares, meaning his proportionate interest in LSI as a going concern without minority or lack-of-marketability discounts; and, that the undiscounted, proportionate "fair value" of Jay's shares in LSI was $16,550,000,

thus rejecting Jay's appraiser's opinion. An order was entered adopting the Memorandum Decision on June 5, 2009, and the circuit court ordered further proceedings to determine the terms and conditions for the purchase of Jay's shares. LSI filed a motion with supporting affidavits to pay the fair value in monthly installments over five years with 4% interest commencing on May 15, 2009, the date of the court's valuation. Jay moved for an order to receive a lump-sum payment of the fair value within 10 days with an interest rate of either 12 or 15%, compounded annually and commencing on November 16, 2005.

[¶7.]     On October 7, 2009, the circuit court issued a Memorandum Decision, finding that requiring LSI to pay Jay in one lump-sum payment would be a hardship and that monthly payments for five years were necessary in the interests of equity. It also awarded Jay simple interest on $16,550,000 at 4.5% beginning November 16, 2005. This rate amounted to nearly three million dollars in interest. The court also found Jay had failed to demonstrate "probable grounds" to dissolve LSI and therefore denied Jay's request for attorney's fees. An order adopting the Memorandum Decision was issued December 2, 2009, in which Jay was ordered to sell all his shares in LSI pursuant to those terms. No security was given to Jay for the fair value amount. The court dismissed the action with prejudice, including the breach of fiduciary duty claims against two LSI directors residing in South Dakota.

[¶8.]     On January 6, 2010, LSI moved the circuit court under SDCL 15-6-60(b) to vacate its award of accrued interest granted pursuant to the December 2, 2009 order. On January 11, 2010, Jay filed a notice of appeal, including the

December 2, 2009 order that included the award of interest. Appeal #25525. The circuit court heard LSI's motion to vacate the award of accrued interest on March 4, 2010, and entered an order denying the motion without prejudice on March 23, 2010. LSI filed a notice of appeal on April 16, 2010, challenging the denial of the order to vacate the award of accrued interest. Appeal #25610. By order of this Court, appeals #25525 and #25610 were consolidated.

[¶9.]     Jay raises the following issues on appeal:

1.     Whether the circuit court erred in determining the "fair value" of Jay's shares.

2.     Whether the circuit court erred in ordering the fair value of Jay's shares to be paid in monthly installments over five years.

3.     Whether the circuit court erred in not granting Jay any security for the fair value LSI owed him.

4.     Whether the circuit court erred in dismissing Jay's claims against LSI Directors with prejudice.

[¶10.]     LSI raises the following issue on appeal:

5.     Whether the circuit court erred in denying LSI's motion to vacate Jay's award of accrued interest.

## STANDARD OF REVIEW

[¶11.]     The parties dispute the standard of review for valuation of shareholder stock bought pursuant to an election under SDCL 47-1A-1434. Jay argues that review should be de novo because it is a mixed question of law and fact. He compares the issue to a review of a circuit court's determination of the fair value of a dissenting shareholder's stock and cites *Richardson v. Palmer Broadcasting Co.*, 353 N.W.2d 374, 378 (Iowa 1984). LSI argues that the circuit court found as a

matter of fact that $16,550,000 was the fair value of Jay's shares, and therefore the standard of review is clearly erroneous. LSI cites the following cases to support its position: *In re Midnight Star Enter., L.P.*, 2006 S.D. 98, ¶ 7, 724 N.W.2d 334, 336; *Fausch v. Fausch*, 2005 S.D. 63, ¶ 11, 697 N.W.2d 748, 753; *Priebe v. Priebe*, 1996 S.D. 136, ¶¶ 8, 18, 556 N.W.2d 78, 80.

[¶12.] We stated in *Midnight Star* that "[o]ur review of a circuit court's valuation of property is clearly erroneous. Whether the circuit court *used the correct method* of determining fair market value is a question of law reviewed de novo." 2006 S.D. 98, ¶ 7, 724 N.W.2d at 336 (internal citations omitted) (emphasis added). *See also First Western Bank Wall v. Olsen*, 2001 S.D. 16, ¶ 12, 621 N.W.2d 611, 616 (applying a de novo standard of review because the circuit court determined the "fair value" of dissenting shareholders' stock, which is a question of statutory interpretation). In this case, the statute requires the circuit court to determine "fair value" as opposed to fair market value. However, *Midnight Star*'s standard applies because we are reviewing to ensure an appropriate valuation method was used.

[¶13.] In ordering the terms of the payment for Jay's shares, the circuit court was exercising its discretion under the statutes. This Court must determine if the circuit court abused its discretion. *DFA Dairy Fin. Serv., L.P. v. Lawson Special Trust*, 2010 S.D. 34, ¶ 18, 781 N.W.2d 664, 670 ("If facts plainly exist to warrant equitable relief and no facts exist to disentitle a party to such relief, then a court is not free simply to ignore the remedy in the name of discretion.") (citing *Adrian v. McKinnie*, 2002 S.D. 10, ¶ 9, 639 N.W.2d 529, 533).

[¶14.] The dismissal of claims is a question of law. We review questions of law de novo. *McGregor v. Crumley*, 2009 S.D. 95, ¶ 15, 775 N.W.2d 91, 95.

## ANALYSIS AND DECISION

[¶15.] **1. Whether the circuit court erred in determining the "fair value" of Jay's shares.**

[¶16.] SDCL 47-1A-1434.4 provides that "the court . . . shall . . . determine the fair value of the petitioner's shares as of the day before the date on which the petition . . . was filed." This Court has not had an opportunity to review a circuit court's "fair value" determination under this statute. No definition of the term is provided. The Legislature could have put a definition in the "General Provisions" section of South Dakota's Business Corporation Act, SDCL 47-1A-140, but did not. Instead, a definition of "fair value" was provided as it related to statutes governing appraisal rights. SDCL 47-1A-1301(4).[1] This Court, however, reviewed a "fair value" determination under repealed SDCL 47-6-40(3) in *Olsen*, 2001 S.D. 16, 621

---

1. SDCL 47-1A-1301(4) provides:

> "Fair value," the value of the corporation's shares determined:
> (a) Immediately before the effectuation of the corporate action to which the shareholder objects;
> (b) Using customary and current valuation concepts and techniques generally employed for similar businesses in the context of the transaction requiring appraisal; and
> (c) Without discounting for lack of marketability or minority status except, if appropriate, for amendments to the articles pursuant to subdivision 47-1A-1302(5).

N.W.2d 611. SDCL 47-6-40(3)[2] related to the valuation of a dissenting shareholder's stock.

[¶17.]     Although the determination of fair value in *Olsen* is informative, it is not controlling because the purposes and policies in that case differ from elections to buy out a shareholder in a dissolution case. The purpose of dissenters' rights statutes is to protect minority shareholders. *Olsen*, 2001 S.D. 16, ¶ 16, 621 N.W.2d at 617. In this case, Jay owned 50% of the stock, making him an equal owner as opposed to a minority shareholder. Also in contrast to dissenting shareholders, petitioners for dissolution who are being bought out are more akin to "willing sellers" who want out of the corporation, which could be for a variety of reasons. Petitioners for dissolution are trying to get out of the corporation either through dissolution or by being bought out.

[¶18.]     However, some of the same principles from dissenting-shareholders cases still apply. For instance, the corporation (or in some cases, existing shareholders) will increase its control or ownership in the corporation when it buys out a shareholder. The shares are not being bought by a third party. This makes application of a "fair market value" determination inappropriate because the economic reality is that the shares are not being bought on the market. In *Olsen*, we rejected the Bank's assertion that "fair value" was analogous with "fair market

---

2.     Repealed in 2005, SDCL 47-6-40(3) provided that "fair value" was defined as "[the shares] value immediately before the effectuation of the corporate action to which the dissenter objects, excluding any appreciation or depreciation in anticipation of such corporate action unless such exclusion would be inequitable." SDCL 47-1A-1301(4) replaced SDCL 47-6-40(3).

value." *Id.* ¶ 17, 621 N.W.2d at 617. Our definition of "fair value" in *Olsen* was the "value of those shares as a proportionate interest in the business as an entity, in other words as 'a going concern.' . . . An appraisal proceeding must focus [on] . . . the stock only as it represents a proportionate part of the enterprise as a whole." *Id.*

[¶19.]        Although the definitions of "fair value" provided by SDCL 47-1A-1301(4) and *Olsen* are not controlling, it is appropriate in this case to draw from them for guidance, as the circuit court did. This approach is supported by the comments to the Model Business Corporation Act (MBCA). The MBCA comments, on which SDCL ch. 47-1A is based, note that § 14.34 "does not specify the components of 'fair value,' and the court may find it useful to consider valuation methods that would be relevant to a judicial appraisal of shares under section 13.30."[3] SDCL §§ 47-1A-1330 to -1330.4 are synonymous with MBCA § 13.30. The comment goes on to caution that "the two proceedings are not wholly analogous, however, and the court should consider all relevant facts and circumstances of the particular case in determining fair value."[4] This statute was written to give substantial discretion to a circuit court in considering the equities of each case.

_____

3.    The comments were not enacted as part of the South Dakota statute. Nevertheless, we have relied upon comments to uniform laws in previous cases as persuasive authority in construing the statute. *Estate of Klauzer*, 2000 S.D. 7, ¶ 33 n.5, 604 N.W.2d 474, 481 n.5. We do so mindful that SDCL 2-14-13 states that a uniform law is to be interpreted and construed "as to effectuate its general purpose to make uniform the law of those states which enact it." *Miller v. Hernandez*, 520 N.W.2d 266, 269 (S.D. 1994).

4.    The comment goes on to give several factors that courts may want to consider in determining value, such as liquidating value, wrongful conduct or the absence thereof, or any shareholders' agreements. The circuit court discussed the egregious conduct of the parties and noted that "there is little in the

(continued . . .)

[¶20.]        Jay argues a non-marketability discount inappropriately tainted the valuation process.[5] The parties stipulated in the Wisconsin action that each party would hire their own appraiser and that there would also be a neutral appraiser. They agreed upon a two-step process. First, all the parties would prepare a preliminary written report setting forth their opinions as to the value of LSI and Jay's 50% interest in LSI, including a breakdown of any discounts. Next, the appraisers would exchange those reports, meet to discuss, and issue a final report, to be determined by a majority vote if necessary. This process was followed. The neutral appraiser and LSI's appraiser agreed in the final report that the undiscounted fair value of Jay's shares in LSI was $16,550,000. The neutral appraiser testified that when he issued his initial report, in which he initially valued Jay's shares at $21,000,000, he did not take into account LSI's "extremely concentrated customer base relative to the peer group of companies that we utilized from a market perspective." LSI's only customer is Link Snacks. After discussion, the neutral appraiser testified he was persuaded that he had not considered all the different risks associated with only having one customer and that this was a "proper" criticism of his initial opinion. Jay argues that this "give and take" process

_____

(. . . continued)
      evidence to determine from where it started. Therefore . . . this [C]ourt does
      not believe it is pertinent in determining the fair value to be assessed LSI
      now that division has been determined."

5.    Jay does not argue on appeal that the circuit court erred in declining to apply
      a minority discount to the value of his shares. Although some of the
      language used by the circuit court in its order mixes the minority and non-
      marketability discount language, it is clear that the circuit court did not
      intend that either discount apply.

included a decrease in valuation because "a hypothetical willing buyer would pay less for LSI because of the significant risk associated with such a high customer concentration."

[¶21.] After hearing expert testimony regarding the valuation and the process by which the amount was determined, the circuit court accepted the valuation of Jay's shares in LSI at $16,550,000, as reached by a majority of the appraisers. LSI's appraiser and the neutral appraiser testified that this amount was the value of Jay's shares without regard to discounts. In its Memorandum Decision, the circuit court stated that he specifically rejected Jay's appraiser's opinions as to valuation. The court noted:

> In order to reach these figures, [Jay's appraiser] projected that the cost [of] beef would decrease as time went on. In fact, they did not. Additionally, [Jay's appraiser] initially took the view that LSI should be considered as part of the larger entity, the entire Jack Link's business entities. However, LSI is a stand-alone corporation.

The circuit court therefore provided other reasons why it rejected Jay's appraiser's higher valuation besides a discount. Additionally, the circuit court accepted the higher dollar amount of the majority appraisers' valuation, not the lower $11,200,000 amount which they said included discounts. Furthermore, the decrease from the neutral appraiser's initial report was not a discount. The decrease was due to further discussion and consideration of LSI's high customer concentration, which is one of many factors the appraisers considered in reaching the final opinion on the fair value of Jay's shares. In looking at the entire appraisal process, to which Jay agreed, and the many factors of the business that had to be considered, this decrease was not a discount.

-11-

[¶22.] The circuit court determined that it would be "unjust and inequitable" to apply a discount for either non-marketability or lack-of-control of shares. A non-marketability discount is applied when shares lack a ready and available market based on the theory that the shares have less value than stock that is easily liquidated. *Olsen*, 2001 S.D. 16, ¶ 25, 621 N.W.2d at 619. It is not relevant that the petitioning shareholder would have had a difficult time liquidating their shares as that was never their intent. Under SDCL 47-1A-1430, a petitioning shareholder was trying to have the corporation dissolved. A buy-out election is a way for remaining shareholders or the corporation to stop that dissolution. Because LSI elected to purchase Jay's shares, a discount for non-marketability is inapplicable as LSI elected to be a ready market for the shares. "A lack of marketability discount is inapposite when a corporation elects to buy out a shareholder who has filed for dissolution of a corporation." *Charland v. Country View Golf Club, Inc.*, 588 A.2d 609, 613 (R.I. 1991). Therefore, we find the reasoning in *Olsen* persuasive, even though that case involved dissenting shareholders and is not controlling, and we determine that the circuit court applied an appropriate method of valuation in this case.

[¶23.] **2.** **Whether the circuit court erred in ordering the fair value of Jay's shares to be paid in monthly installments over five years.**

[¶24.] Jay argues SDCL 47-1A-1434.6 presumes a lump-sum payment. It provides in part, "The purchase ordered pursuant to § 47-1A-1434.4 shall be made within ten days after the date the order becomes final." However, SDCL 47-1A-1434.4 provides in part, "Upon determining the fair value of the shares, the court

-12-

shall enter an order directing the purchase *upon such terms and conditions as the court deems appropriate*, which may include payment of the purchase price in installments, *if necessary in the interests of equity*[.]" (emphasis added). Jay argues LSI has not overcome the "presumption."

[¶25.]     The circuit court rejected Jay's argument that SDCL 47-1A-1434.6 created a presumption. We agree. The language of SDCL 47-1A-1434.4 permits a court, in its discretion, to allow payments in installments if necessary in the interests of equity. These statutes must be read together. *See Peterson, ex rel. Peterson v. Burns,* 2001 S.D. 126, ¶ 32, 635 N.W.2d 556, 568. In doing so, a plain reading of the statutes does not support a presumption of a lump-sum payment. Furthermore, following basic principles of statutory construction, the circuit court fulfilled the plain-language requirements of the statute. The circuit court reviewed financial evidence, including affidavits, submitted by LSI that supported its argument that it did not have the sum of the purchase price of Jay's stock readily available and could not get a loan for the amount.[6]

[¶26.]     Jay also argued that LSI was judicially estopped from raising financial hardship as a reason for needing to pay in installments. The circuit court held that judicial estoppel was not applicable:

---

6.     Jay argues that one of the affidavits, in which the Chief Financial Officer for Link states that "unnamed banks would not lend the company $16,550,000," was hearsay. However, the circuit court specifically stated that it would not consider that affidavit in determining whether payment in installments was necessary. Additionally, Jay waived this argument because he had the opportunity to request an evidentiary hearing regarding this document and did not do so.

> While it is true that LSI earlier took the position that its current financial situation was not relevant to [the circuit court's] determination, that concerned . . . the value of the company at the time of the breakdown between the stockholders. In this instance, the value of the company goes to a different issue – the ability of the company to make a one-time payment versus payment in installments.

We agree with the circuit court that judicial estoppel is not applicable. The circuit court correctly determined that LSI's financial status at the time of the order was relevant to the terms of the payments but not to the valuation of Jay's shares.

[¶27.]     The MBCA's corresponding comments state that "in determining whether installment payments are 'necessary in the interests of equity,' the court should weigh any possible hardship to the purchaser against the petitioner's interest in receiving full and prompt payment of the value of his or her shares." The circuit court did not abuse its discretion in ordering the payment to Jay in installments. There is no statutory presumption of a lump-sum payment. The circuit court considered proper evidence in determining that installment payments were "necessary in the interests of equity." LSI was not judicially estopped from demonstrating financial hardship to the circuit court.

[¶28.]     **3.     Whether the circuit court erred in not granting Jay any security for the fair value LSI owed him.**

[¶29.]     SDCL 47-1A-1434.4 provides in part:

> Upon determining the fair value of the shares, the court shall enter an order directing the purchase upon such terms and conditions as the court deems appropriate, which *may include* payment of the purchase price in installments, if necessary in the interest of equity, *provision for security to assure payment of the purchase price* and any additional costs, fees, and expenses as may have been awarded.

(emphasis added). Like payment in installments, the circuit court enjoys discretion in ordering the provision of security.

[¶30.]       The December 2, 2009, order stated that "the order does not create or grant a security interest in any of LSI's assets to or for the benefit of Jay Link, who upon sale of shares will become an unsecured creditor of LSI." While the parties submitted briefs to the circuit court regarding proposed terms of the payment, the court did not make reference to the issue of security in its Memorandum Decision, from which LSI prepared the order.

[¶31.]       The comments to MBCA section 14.34, from which SDCL 47-1A-1434.4 was adopted, state that "before ordering payment in installments, the court should be satisfied with the purchaser's ability to meet the scheduled payments and to provide such security as the court deems necessary." Unlike its discussion on the order to make installment payments, the circuit court did not provide any analysis or reasoning as to why it did not grant security. We are therefore unable to review the court's reasoning for its decision. Jay has brought forth sufficient evidence to raise the issue of security. Moreover, at oral argument Jay's counsel indicated that Jay is ready to transfer his LSI shares. Circumstances have therefore changed since this matter was last available for the circuit court's consideration. We remand on this issue and direct the circuit court to enter findings on the issue of security for the debt owed to Jay.

[¶32.]       **4.     Whether the circuit court erred in dismissing Jay's claims against LSI directors with prejudice.**

[¶33.]       As part of the Wisconsin action, Jay alleged breach of fiduciary duty claims against Jack, Troy, two other LSI directors, John Hermeier and Larry

Jarvela, and two directors in other Link companies. Using separate jury forms for each director, the Wisconsin jury found that Hermeier and Jarvela had not breached any fiduciary duties owed to Jay. In the South Dakota action, Jay alleged that Jack, Troy, and two LSI directors residing in South Dakota, Terry Smith and Doug Walz, had breached fiduciary duties owed to Jay as a shareholder.[7] Smith and Walz were not parties in the Wisconsin action. However, Jay's allegations against the LSI directors in each action were virtually identical.[8] The breach of fiduciary duty claims were not litigated before the circuit court. As part of the December 2, 2009 order dismissing the petition for dissolution, the circuit court stated that "this action is dismissed with prejudice and without costs. . . . This Court does, however, retain jurisdiction to enforce the terms of this order[.]" The circuit court did not provide any reasoning or analysis regarding the dismissal.

[¶34.]    LSI argues Jay's dismissed claims are barred by collateral estoppel and res judicata.[9] We address the applicability of each doctrine in turn. This Court

---

7.    Jay also included Larry Jarvela and John Hermeier in the South Dakota complaint but does not argue on appeal that it was improper to dismiss his claims against them.

8.    In Jay's Wisconsin counterclaim and South Dakota claim, he alleged that "[LSI directors] went along with the scheme [to force Jay out of LSI and accept less than fair value of his Link ownership interests], in violation of their fiduciary duties, out of fear of termination and/or loss of compensation."

9.    LSI argues that SDCL 47-1A-1434.5 "contemplates a clean break and a separation between the company and the petitioning shareholder, by barring claims that the petitioner may have had as a shareholder." SDCL 47-1A-1434.5 provides that "upon entry of an order under . . . 47-1A-1434.4, the court shall dismiss the petition to dissolve the corporation under § 47-1A-1430, and the petitioning shareholder no longer has any rights or status as a shareholder of the corporation, except the right to receive the amounts
                                                                    (continued . . .)

recently discussed the doctrine of res judicata in *American Family Insurance Group v. Robnik*, 2010 S.D. 69, ¶¶ 14 -22, 787 N.W.2d 768, 774-76. We explained that "res judicata consists of two preclusion concepts:  issue preclusion and claim preclusion." *Id.* ¶ 15, 787 N.W.2d at 774 (citing *Christians v. Christians*, 2001 S.D. 142, ¶ 46, 637 N.W.2d 377, 387 (Konenkamp, J., concurring specially)).  We cited to the United States Supreme Court's explanation of the doctrine:

> The preclusive effects of former adjudication are discussed in varying and, at times, seemingly conflicting terminology, attributable to the evolution of preclusion concepts over the years.  These effects are referred to collectively by most commentators as the doctrine of "res judicata." *See* Restatement (Second) of Judgments, Introductory Note before ch. 3 (1982); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4402 (1981).  Res judicata is often analyzed further to consist of two preclusion concepts:  "issue preclusion" and "claim preclusion."  Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.  *See* Restatement, *supra,* § 27.  This effect also is referred to as direct or collateral estoppel.  Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit[.]

*Id.* (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n.1, 104 S.Ct. 892, 894 n.1, 79 L.Ed.2d 56 (1984)); *see also Christians,* 2001 S.D. 142, ¶ 46, 637 N.W.2d at 387.

[¶35.]        LSI first invokes collateral estoppel, or the issue preclusion effect of res judicata.  Collateral estoppel "prevents relitigation of issues that were actually

---

(. . . continued)
        awarded by the order of the court[.]"  We do not address this argument as Jay's claims are precluded by res judicata.

litigated in a prior proceeding." *Dakota, Minn. & E. R.R. Corp. v. Acuity*, 2006 S.D. 72, ¶ 13, 720 N.W.2d 655, 659. LSI argues that collateral estoppel prohibits Jay from litigating the breach of fiduciary duties claims in South Dakota. The breach claims allege that Smith and Walz, as LSI directors, went along with Jack and Troy's "scheme" to force Jay out of LSI and accept less than fair value for his various Link ownership interests "in violation of their fiduciary duties." LSI notes that Jay has not alleged that Smith or Walz did anything different than the other LSI directors in the Wisconsin action, who were not found to have breached their fiduciary duties. Jay argues that he never actually litigated the issue whether Smith and Walz breached their fiduciary duties to Jay as directors of LSI.

[¶36.] Issue preclusion, or collateral estoppel, is not appropriate to bar Jay's claims in this case. "Issue preclusion only bars 'a point [that] was *actually and directly in issue* in a former action and was judicially passed upon and determined by a domestic court of competent jurisdiction.'" *Robnik*, 2010 S.D. 69, ¶ 18, 787 N.W.2d at 775 (emphasis added) (citing *Sodak Distrib. Co. v. Wayne*, 77 S.D. 496, 502, 93 N.W.2d 791, 794 (1958)). The issue whether Smith and Walz breached fiduciary duties when they allegedly took actions to "go along with [Jack and Troy's] scheme" to force Jay out of the Link enterprises was not litigated as part of the Wisconsin trial. Smith and Walz were not parties in the Wisconsin action, and therefore the issue could not have been actually and directly in issue in that action. Therefore, we conclude that Jay's claims against Smith and Walz were not barred by collateral estoppel.

[¶37.]     LSI next argues that the claim preclusion effect of res judicata

prevents litigation of Jay's alleged breach of fiduciary duty claims.

> The doctrine of res judicata serves as *claim* preclusion to
> prevent relitigation of an *issue actually litigated or which could
> have been properly raised and determined* in a prior action.  For
> purposes of res judicata, a cause of action is comprised of the
> facts which give rise to, or establish, the right a party seeks to
> enforce. . . . [T]he test is a query into whether the wrong sought
> to be redressed is the same in both actions.  Res judicata, which
> embodies the concepts of *merger* and *bar,* is therefore broader
> than the *issue* preclusion of collateral estoppel.  Res judicata
> bars an attempt to relitigate a prior determined cause of action
> by the parties, or one of the parties in privity, to a party in the
> earlier suit.

*Barnes v. Matzner*, 2003 S.D. 42, ¶ 16, 661 N.W.2d 372, 377 (emphasis in original).

[¶38.]     Jay argues that res judicata, or claim preclusion, does not apply

because neither Smith nor Walz were named parties in the Wisconsin action.  LSI

contends the Wisconsin court would have had personal jurisdiction over Smith and

Walz under Wisconsin's long-arm statute.[10]  We have previously stated that claim

preclusion not only "precludes relitigation of issues previously heard and resolved; it

also bars prosecution of claims that could have been raised in the earlier

proceeding, even though not actually raised." *Robnik*, 2010 S.D. 69, ¶ 19, 787

N.W.2d at 775 (citing *Lee v. Rapid City Area Sch. Dist., No. 51-4*, 526 N.W.2d 738,

---

10.     Wisconsin's long-arm statute recognizes personal jurisdiction over non-
        resident defendants "in any action claiming injury to person or property
        within or without this state arising out of an act or omission within this state
        by the defendant," Wis. Stat. § 801.05(3), or "in any action claiming injury to
        person or property within this state arising out of an act or omission outside
        this state by the defendant, provided that at the time of the injury . . .
        solicitation or service activities were carried on within this state by or on
        behalf of the defendant[.]" Wis. Stat. § 801.05(4).

740 (S.D. 1995)). Similarly, LSI argues that the doctrine of res judicata applies not only to named parties but also to those who could have been sued as parties in an earlier action as well. *Black Hills Jewelry Mfg. Co. v. Felco Jewel Indus., Inc.*, 336 N.W.2d 153, 159 (S.D. 1983) (allowing a new defendant to affirmatively raise the defense of res judicata to bar a plaintiff from reasserting issues the plaintiff had previously litigated against another defendant).

[¶39.] We agree with LSI. A party must have had a "full and fair opportunity to litigate the issues in the prior proceeding" in order to invoke the claim preclusive effect of res judicata. *Robnik*, 2010 S.D. 69, ¶ 20, 787 N.W.2d at 775 (citing *People ex. rel. L.S.*, 2006 S.D. 76, ¶ 22, 721 N.W.2d 83, 90). Jay had a full and fair opportunity to litigate the issue of breach of fiduciary duties by Smith and Walz as LSI directors in the Wisconsin action. Jay could have sued them as part of his counterclaim along with the other LSI directors. Jay argues that jurisdiction in Wisconsin over Smith and Walz was uncertain. However, no attempt was made to bring them in that action and Jay does not offer a credible explanation as to why he did not sue them in Wisconsin. Nor does Jay offer an explanation as to why he did not pursue the claims against Smith and Walz in the South Dakota action. Other than filing the complaint, Jay took no steps regarding these claims and made no requests of the circuit court. Thus, we affirm the circuit court's dismissal of the claims with prejudice because they are barred by res judicata.

[¶40.] **5. Whether the circuit court erred in denying LSI's motion to vacate Jay's award of accrued interest.**

[¶41.] The December 2, 2009 order that Jay appealed contained the award of interest. In March 2010, the circuit court denied a motion filed by LSI under SDCL

15-6-60(b)(2) and (b)(3) to set aside Jay's award of accrued interest in the December 2009 order based on newly discovered evidence and fraud, misrepresentation, or other misconduct by Jay. The circuit court denied the motion without prejudice.

[¶42.]        Neither party raised the question of the circuit court's jurisdiction to entertain the motion that is now on appeal to this Court. Although the jurisdiction of the circuit court to address the motion is questionable, we do not reach the issue.[11] The circuit court's language from the order denying the motion to vacate the award of interest clearly demonstrates the court's reluctance to rule while this appeal was pending. The order denying the motion provides LSI "with leave to resubmit said motion following disposition of the appeal." The circuit court's comments during the hearing on this issue also clearly illustrate the court's reluctance to rule during the pendency of this appeal:

---

11.    In *Menno State Bank v. City of Menno*, 297 N.W.2d 460 (S.D. 1980), the issue before this Court was "whether SDCL 15-6-60(b) contemplates a procedure whereby a motion to vacate a judgment may be entertained by a trial court during the pendency of an appeal." *Id.* at 461. This Court adopted the Eighth Circuit Court of Appeals' rule:

> [I]n such a situation the district court has jurisdiction to consider the motion and if it finds the motion to be without merit to enter an order denying the motion from which order an appeal may be taken. . . . If, on the other hand, the [circuit] court decides that the motion should be granted, counsel for the movant should request the [Supreme Court] remand the case so that a proper order can be entered.

*Id.* (citing *Pioneer Ins. Co. v. Gelt*, 558 F.2d 1303, 1312 (8th Cir. 1977)). We do not address whether *Menno State Bank* applies in this case because the circuit court here did not make a ruling on the merits of LSI's motion. Even if it had ruled favorably on LSI's motion, this Court received no remand request.

> What I'm going to do is I'm going to deny the motion for the moment. Once the Supreme Court rules, we'll have an opportunity – you will have an opportunity to raise it again. And at that time, I think I will have more options available. I don't know if Jay has violated SDCL 47-1A-1434 or not, but if he has, I have certain options available there also. But at this point in time, I'm not going to make that decision because I think I'll have a better opportunity to do that once we know what the Supreme Court says.

While denying the motion, the circuit court's decision essentially defers ruling on the issue until after the appeal has run its course.

[¶43.] SDCL 15-26A-3 limits our appellate jurisdiction by allowing appeals only from a final order or judgment. *Jacquot v. Rozum*, 2010 S.D. 84, ¶ 12, 790 N.W.2d 498, 502. We have recognized the United States Supreme Court's standard that generally a final decision is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midcom, Inc. v. Oehlerking*, 2006 S.D. 87, ¶ 15, 722 N.W.2d 722, 726 (citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199, 108 S.Ct. 1717, 1720, 100 L.Ed.2d 178 (1988)). The circuit court did not enter a final order from LSI's motion to vacate because it was denied without prejudice. Nor did the circuit court consider the merits of LSI's motion. It made clear it was waiting for the decision from the initial appeal to be released before making a determination on LSI's motion. Therefore, whether the circuit court had jurisdiction or not, it did not enter a final order. Accordingly, we do not address the merits of LSI's argument on appeal.

## CONCLUSION

[¶44.] We affirm the circuit court on the valuation of Jay's shares, the order to pay Jay the fair value of his shares in monthly installments over five years, and

the dismissal of Jay's breach of fiduciary duty claims.  We reverse on the issue of security and remand for the circuit court to enter findings.  Finally, we remand for the circuit court to consider LSI's motion to vacate the award of accrued interest on the merits.

[¶45.]     KONENKAMP, ZINTER, MEIERHENRY, and SEVERSON, Justices, concur.