#25908-a-DG

**2012 S.D. 14**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

RICHARD NEMEC,                                  Plaintiff and Appellee,

    v.

ASHLEY GOEMAN,                                  Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

* * * *

ROSE ANNE WENDELL
Pierre, South Dakota                            Attorney for plaintiff
                                                and appellee.


DOUGLAS P. CUMMINGS, Jr.
Sioux Falls, South Dakota                       Attorney for defendant
                                                and appellant.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 9, 2012

OPINION FILED **02/15/12**

#25908

GILBERTSON, Chief Justice

[¶1.]        This is an appeal from an order granting primary physical custody of the parties' three children to Father.  We affirm.

## FACTS

[¶2.]        Ashley Goeman (Mother) and Richard Nemec (Father) met while they were both in the custody of the Department of Corrections as teenagers.  They had three children in 2001, 2002, and 2003.  Mother and Father never married.  They lived in Pierre, South Dakota until they separated in spring 2007.  During this time, Father's mother, LaDene, provided substantial care and financial support to Mother, Father, and the children.

[¶3.]        Father and Mother had a history of domestic abuse.  Father pleaded guilty to simple assault in 2005 and disorderly conduct in 2006.[1]  Mother secured a protection order against Father in May 2007.  Father consented to the order becoming permanent without any court making a finding of domestic abuse.  Father completed an anger management class after his last conviction.  After a car accident in 2008, Father changed his lifestyle.  He quit using illegal drugs and drinking.

[¶4.]        When the parties separated in 2007, Mother moved to Sioux Falls.  She left the children with LaDene in Pierre.  Mother did not provide LaDene any financial support for the children.  LaDene only allowed Father to have contact with the children in person when he was sober.  He talked with the children almost daily on the phone if he could not see them in person.

---

1.        Father was again convicted of disorderly conduct in 2007 in a case unrelated to domestic violence.

[¶5.] When Mother moved, she owned a vehicle but it was repossessed in late 2007. Since then, she has not owned a vehicle and does not have a driver's license. Mother had sporadic, minimal contact with the children after she moved to Sioux Falls. LaDene provided gas money for Mother to facilitate at least two visits. In spring 2008, LaDene sought financial assistance from the Department of Social Services to help care for the children. Mother was notified that she would be required to reimburse the State for funds it paid to LaDene. Father began paying child support to the State.

[¶6.] On March 17, 2008, Mother arrived in Pierre without notice and attempted to remove the oldest child from school. As a result of Mother's actions and in concern for the children's welfare, in April 2008 LaDene filed a petition for guardianship of the children.[2] The petition was granted in September 2008. The circuit court made extensive findings on Mother's failure to properly care for the children. The court did not make a finding on Mother's fitness.

[¶7.] Between September 2008 and June 2010, Mother had sporadic contact with the children. She went five months without seeing the children and three months without making any attempt to contact them at all. LaDene testified she did not always have a phone number to reach Mother during that time. In 2009, Mother was twice convicted of driving under the influence. Mother's employment history during this time was irregular. She did not provide any child support. Meanwhile, Father had improved his life and began spending more time with his

---

2. Father chose not to participate in the guardianship action.

children. He also began a stable relationship with his current wife, obtained steady employment, and bought a home.

[¶8.] Mother appealed the grant of guardianship to LaDene. This Court reversed the order in June 2010. *In re Guardianship of S.M.N.*, 2010 S.D. 31, ¶ 29, 781 N.W.2d 213, 225. Mother received primary physical custody of the children in June 2010. She then denied contact between the children and Father until Father got a court order. Father did not see the children until October 2010.

[¶9.] Father petitioned for custody of the children immediately after this Court issued its' decision. Custody between Father and Mother had not previously been determined by a court. At trial, Mother objected to any evidence from before August 2008. Mother argued that such evidence was barred by collateral estoppel because it was tried in the guardianship case. The court overruled the objection. The circuit court awarded Father primary physical custody in January 2011.

[¶10.] On appeal, the issues presented are:

1. Whether the circuit court erred in considering evidence of conduct before the August 2008 guardianship trial.

2. Whether the circuit court erred in concluding that Father rebutted the presumption that he should not receive custody.

**STANDARD OF REVIEW**

[¶11.] "The trial court's findings of fact will be upheld unless clearly erroneous." *Pietrzak v. Schroeder*, 2009 S.D. 1, ¶ 38, 759 N.W.2d 734, 744. "We will overturn the trial court's findings of fact on appeal only when a complete review of the evidence leaves the Court with a definite and firm conviction that a mistake has

been made." *Id.* A decision on the question of the application of res judicata is reviewed de novo. *People ex rel. L.S.*, 2006 S.D. 76, ¶ 21, 721 N.W.2d 83, 89.

## ANALYSIS

[¶12.]     **1.     Whether the circuit court erred in considering evidence of conduct before the August 2008 guardianship trial.**

[¶13.]     Mother argues that res judicata should apply to the circuit court's "finding in the guardianship case that [Mother] was fit to have custody of her children." She asserts that because she was already found to be a fit parent in the guardianship case, she should not have to "defend herself twice against the same allegations." Specifically, Mother argues that anything that took place before the guardianship trial should not have been considered in the current determination of fitness.

[¶14.]     "[R]es judicata consists of two preclusion concepts: issue preclusion and claim preclusion." *Link v. L.S.I., Inc.*, 2010 S.D. 103, ¶ 34, 793 N.W.2d 44, 54. "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Id.* (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1, 104 S. Ct. 892, 894 n.1, 79 L. Ed. 2d 56 (1984)). Issue preclusion is also known as collateral estoppel. *Id.* "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit[.]" *Id.*

[¶15.]     Res judicata is not applicable to any previous proceedings concerning Mother's fitness. "Issue preclusion only bars 'a point that was *actually and directly*

*in issue* in a former action and was judicially passed upon and determined by a domestic court of competent jurisdiction.'" *Id.* at ¶ 36, 793 N.W.2d at 55 (quoting *Am. Family Ins. Group v. Robnik*, 2010 S.D. 69, ¶ 18, 787 N.W.2d 768, 775). The issue that Mother wants precluded is her parental fitness. The circuit court in the guardianship action never made a finding on Mother's fitness.[3] Rather, the court concluded that extraordinary circumstances warranted granting LaDene guardianship over the children. Contrary to Mother's assertion, the absence of a finding on fitness does not equate to a finding of fitness. Therefore, no court has ever "judicially passed upon and determined" Mother's fitness and the issue is not precluded in this case.

[¶16.]     As to claim preclusion, the "test is a query into whether the wrong sought to be redressed is the same in both actions." *Id.* at ¶ 37 (quoting *Barnes v. Matzner*, 2003 S.D. 42, ¶ 16, 661 N.W.2d 372, 377). Claim preclusion bars not only relitigation of issues previously heard and resolved, but also claims that could have been raised in the earlier proceeding, even though not actually raised. *Id.* ¶ 38. We have previously said:

> [W]hen custody was originally settled by agreement, the court
> had not decided the issue of custody in light of the best interests
> of the child, and so such considerations would not be res
> judicata. The basis for allowing the court to revisit all aspects of

---

3.     A review of the findings of fact and conclusions of law from the 2008 guardianship trial reveals that the circuit court made no such finding. The circuit court made extensive findings on both Mother and LaDene. The court concluded that extraordinary circumstances warranted granting custody to LaDene. Although that order was ultimately reversed by this Court, it is important that no circuit court has ever made an explicit ruling on Mother's fitness before the current case.

> a custody case is that the court does so on behalf of the child
> whose interests were not represented in the original agreement.

*Olson v. Olson*, 1996 S.D. 90, ¶ 11 n.2, 552 N.W.2d 396, 399 n.2 (discussing holding in *Kolb v. Kolb*, 324 N.W.2d 279 (S.D. 1982)).  Determining custody in the best interests of the children is a fluid concept with a similar analysis.  It cannot be compartmentalized or "sliced and diced."  Under South Dakota case law, the issue of mother's fitness in this case is considered anew and is but one component of the ultimate issue, that being the best interests of the children.

[¶17.]    In the guardianship case, the court examined the best interests of the children between LaDene and Mother, in addition to extraordinary circumstances.  In the current case, the court considered, for the first time, the best interests of the children between Father and Mother.  When making determinations on the parents' fitness, the court should be able to consider all the relevant history of both parents.  The court should not be restricted by the guardianship case that involved different parties at a different time.  Furthermore, it is not clear how a "finding" in the guardianship action on Mother's fitness would be beneficial to Mother because it does not equate to a current finding that the children's best interests warrants granting her custody now.

[¶18.]    Even if the question of Mother's fitness qualified for consideration of res judicata, in this case the facts are not compelling enough to apply the doctrine.  "[W]hen it comes to protecting children res judicata should be cautiously applied."  *People ex rel. L.S.*, 2006 S.D. 76, ¶ 24, 721 N.W.2d at 90.  "Considerations regarding a child's welfare are rarely, if ever, static.  In fact, it is more likely that the child's

environment is constantly evolving, thus justifying the court's continuing jurisdiction." *Id.* at ¶ 27, 721 N.W.2d at 91 (quoting *State in the interest of J.J.T.,* 877 P.2d 161, 163 (Utah Ct. App. 1994)). This is demonstrated by the changes that have occurred in the lives of Father, Mother, and the children over the past several years.

[¶19.] **2. Whether the circuit court erred in concluding that Father rebutted the presumption that he should not receive custody.**

[¶20.] The court considered SDCL 25-4-45.5 in awarding custody to Father. SDCL 25-4-45.5 provides:

> In awarding custody involving a minor, the court shall consider:
> (1) A conviction of domestic abuse as defined in subdivision 25-10-1(1); or
> (2) A conviction of assault against a person as defined in subdivision 25-10-1(2), except against any person related by consanguinity, but not living in the same household; or
> (3) A history of domestic abuse.
> The conviction or history of domestic abuse creates a rebuttable presumption that awarding custody to the abusive parent is not in the best interest of the minor. A history of domestic abuse may only be proven by greater convincing force of the evidence.

[¶21.] SDCL 25-4-45.5 creates a rebuttable presumption. As we indicated in *Stavig v. Stavig,* 2009 S.D. 89, ¶ 16, 774 N.W.2d 454, 460, this statute is subject to South Dakota's rule on a presumption in civil cases, SDCL 19-11-1 (Rule 301). SDCL 19-11-1 (Rule 301) provides:

> In all civil actions and proceedings, unless otherwise provided for by statute or by chapters 19-9 to 19-18, inclusive, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally

cast. When *substantial, credible evidence* has been introduced to rebut the presumption, it shall disappear from the action or proceeding, and the jury shall not be instructed thereon.

(Emphasis added.)[4] "[G]oing forward with 'substantial, credible evidence' should not ordinarily be equated with meeting any particular burden of proof." *Stavig*, 2009 S.D. 89, ¶ 16, 774 N.W.2d at 460 (quoting *Estate of Dimond*, 2008 S.D. 131, ¶ 9, 759 N.W.2d 534, 537). Rather, "the substantial, credible evidence requirement means that a presumption may be rebutted or met with such evidence as a trier of fact would find sufficient to base a decision on the issue, if no contrary evidence was submitted." *Id.*

[¶22.] The court determined that while Father has an assault conviction, both parties engaged in domestic violence against each other. The court also concluded that any presumption in favor of awarding custody to Mother under this statute was rebutted by the clear and convincing weight of the evidence. The evidence established that it was in the children's best interests to award primary physical custody to Father.

---

4. SDCL 19-11-1 varies from Federal Rule of Evidence 301 with the addition of the final sentence. The South Dakota Rules of Evidence Committee commented when the rule was adopted in 1978 that "[t]he last sentence of the proposed rule was felt necessary by the Committee to make it clear to the Court that it should not instruct on a presumption which has been rebutted by substantial, credible evidence, thereby retaining the current South Dakota practice."

[¶23.]    Father asserts that if he was subject to the statutory presumption that he should not receive custody, he rebutted it.[5]  Mother contends that the only evidence offered to rebut the presumption was Father's own testimony.[6]  Mother further asserts that the court only made minimal findings concerning the Father's domestic abuse history.

[¶24.]    The circuit court found Father to be credible and resolved conflicting testimony in his favor.[7]  We give deference to circuit courts in determining the credibility of a witness.  *Hubbard v. City of Pierre*, 2010 S.D. 55, ¶ 26, 784 N.W.2d 499, 511 (reiterating that "the credibility of the witnesses, the import to be accorded their testimony, and the weight of the evidence must be determined by the trial court, and we give due regard to the trial court's opportunity to observe the witnesses and examine the evidence.").  Mother has not demonstrated that the

---

5.    Father argues that he does not have a confirmed history of domestic violence. We do not address the argument because the circuit court concluded the presumption did apply and it was rebutted.

6.    Mother also argues that the testimony provided by Father stating he had improved his life and relationships with his children occurred before Mother regained custody in June 2010.  Mother asserts that this evidence could have been considered in the guardianship trial but Father chose not to participate. This argument revisits Mother's first issue.  Given our result in that issue, we do not address this argument here.

7.    The circuit court stated:
>     The [c]ourt listened to the testimony of the parties in open court, observed their respective demeanors and manner of testifying, and has made credibility determinations in order to resolve conflicting claims.  Based thereon, the [c]ourt deems [Father's] testimony to be the more credible, and has resolved conflicts between their proffered versions of events in favor of [Father's] accounts.

findings based on Father's testimony are clearly erroneous. We therefore accept Father's testimony as true.

[¶25.]     This Court utilizes all the findings of fact and conclusions of law in examining whether the presumption was rebutted. The circuit court carefully considered all of the factors relevant to determining the children's best interests. Overall, the circuit court's findings and conclusions overwhelmingly indicated that, at this time, it is in the children's best interests that primary physical custody be awarded to Father. Mother has not directly challenged that the circuit court erred in concluding that it was in the children's best interests to award primary physical custody to Father. Considering the standard of review, we cannot conclude that the circuit court erred in concluding that the presumption of unfitness was rebutted.

## CONCLUSION

[¶26.]     In conclusion, res judicata does not apply to Mother's fitness. Furthermore, Father has rebutted the presumption that he should not be awarded custody. We affirm.

[¶27.]     KONENKAMP, ZINTER, and SEVERSON, Justices, and ANDERSON, Circuit Court Judge, concur.

[¶28.]     ANDERSON, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.