#29432-r-MES
**2021 S.D. 49**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE ESTATE OF
MARLENE PETRIK, a/k/a ELLEN MARLENE PETRIK,
Deceased.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CHARLES MIX COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE BRUCE V. ANDERSON
Judge

* * * *

DANIEL K. BRENDTRO
ROBERT D. TRZYNKA of
Hovland, Rasmus, Brendtro
   & Trzynka, Prof. LLC
Sioux Falls, South Dakota

Attorneys for appellant David
L. Petrik, individually and as
personal representative.

TIMOTHY R. WHALEN
Lake Andes, South Dakota

Attorney for appellees Audrey
Petrik and Estate of Dale A.
Petrik.

* * * *

CONSIDERED ON BRIEFS
APRIL 26, 2021
OPINION FILED **08/18/21**

SALTER, Justice

[¶1.] This appeal follows the circuit court's decision granting a petition to terminate a joint tenancy filed within the estate action of one of the deceased joint tenants, without notice or a hearing. We vacate the court's order terminating the joint tenancy and remand the case for further proceedings.

## Facts and Procedural History

[¶2.] Marlene Petrik died in Wagner in October 2017. Her 1994 will, a first codicil from 1999, and a second codicil executed in 2011 were all filed with the Charles Mix County Clerk of Courts as part of an informal probate application.

[¶3.] The application also listed as "heirs and devisees" Marlene's five children, who included David Petrik and Dale Petrik, both of whom received gifts of real estate in Marlene's will. The will contained a provision devising to David portions of three sections of land in Charles Mix County. Another provision in the will gave the following real estate to Dale:

> Lots 3, 4, & 5 and the Southeast Quarter of the Northwest Quarter (SE¼ NW¼) of Section six (6), Township 96N, Range 63 West of the 5th P.M., Charles Mix County, State of South Dakota.

Marlene's will also contained a residuary clause, which named her five children as per capita residuary beneficiaries.

[¶4.] The first codicil to Marlene's will revised and reduced David's real estate gift. However, Marlene made no other changes, and the first codicil expressly stated her intent to "ratify and confirm" the original will.

[¶5.] The second codicil revoked the original residuary clause and replaced it with five specific provisions relating to each of Marlene's children. Four of the

children received cash gifts funded by separate life insurance policies, including $150,000 cash gifts to Dale and a third son.[1] David did not receive a specific gift under the terms of the second codicil, but he was named the sole beneficiary of all remaining property, "whether real, personal or mixed[.]" The second codicil did not otherwise change the terms of the will or the first codicil, which Marlene again "ratif[ied] and confirm[ed]." It appears that the separate section of the will that provided for Dale's real estate gift was left intact.[2]

[¶6.]	After Marlene's death, David was appointed as the personal representative of Marlene's estate and published notice to creditors for three weeks in August 2018. The clerk's record indicates no further activity for the next two years.

[¶7.]	Submissions from the parties beginning in August 2020 indicate that Dale passed away during the interim and that his estate began an effort to terminate a joint tenancy in real estate held by Marlene and Dale. Acting as his personal representative, Dale's surviving wife, Audrey Petrik, engaged counsel who assisted in her effort to file a petition to terminate the joint tenancy within Marlene's pending probate action. Though the petition did not state when the joint

---

1.	Marlene's two daughters received smaller cash gifts, but the second codicil stated that each had previously received lifetime gifts of real property.

2.	David states in his reply brief that the second codicil "struck out Dale's property gift." Based upon the limited record before us, we are uncertain whether this statement is accurate. The second codicil revised only the residuary clause of Marlene's will, a clause separate and apart from the provision concerning Dale's real estate gift. However, that factual issue is not before us, and our recitation of the facts should not be viewed as a definitive interpretation of Marlene's will and the two codicils.

tenancy commenced,[3] it alleged the land was worth $746,139 and included 160.46 acres, and listed the legal description as:

> The Northwest Quarter, less Lot H-1, Section Six (6), Township Ninety-six (96), Range Sixty-three (63) West of the 5th P.M., Charles Mix County South Dakota; also described as Lots Four (4) and Five (5) and the East One-half of the Northwest Quarter (E½ NW¼), Section Six (6), Township Ninety-six (96) North, Range Sixty-three (63) West of the 5th P.M., Charles Mix County, South Dakota.

The petition included a prayer for relief, which asked "that the [c]ourt enter its order terminating [Marlene's] joint interest . . . judicially establish the death of [Marlene], and declare [Dale] . . . the owner in fee simple[.]"

[¶8.] Though counsel for Dale's estate served notice of his appearance in Marlene's probate action, he did not serve Marlene's estate or any of her surviving children with the petition to terminate the joint tenancy or Audrey's accompanying affidavit. Both documents were dated August 12, 2020, and filed with the clerk on August 20, 2020. The circuit court issued an order terminating the joint tenancy without a hearing on August 25, 2020. The order stated, among other things, that Marlene's interest in the joint tenancy real estate was terminated and "that title to the above described property is hereby vested absolutely and in its entirety to Dale A. Petrik, the surviving joint owner[.]"

[¶9.] Counsel representing David as an interested party and the personal representative of Marlene's estate filed a notice of appeal on September 23, 2020, seeking review of the order terminating the joint tenancy. David's attorneys also

---

3. The parties' submissions on appeal describe a 2005 deed as the basis for the joint tenancy claim, though this fact is not established in the record.

filed a notice of pending claims with the circuit court, indicating that the ownership of the joint tenancy land was disputed and was also the subject of David's simultaneously-initiated declaratory judgment action, naming Dale's estate as a defendant. Attached to the notice of pending claims was a copy of the complaint in the declaratory judgment case, listing additional claims for breach of contract and specific performance and alleging that Marlene and Dale entered into an agreement under which Dale would receive proceeds from a life insurance policy in lieu of the joint tenancy land.

[¶10.]     During the pendency of this appeal, Dale's estate moved to dismiss, arguing a lack of appellate jurisdiction. In its view, the circuit court's order was not a final appealable order, and David's challenge to termination of the joint tenancy should be litigated exclusively in the separate declaratory judgment action. The motion to dismiss asserted "the issues regarding the order on appeal herein have not been fully litigated as [the] same are the subject of the lawsuit pending in Charles Mix County." David resisted the motion, which we considered and denied prior to submission of the appeal.

[¶11.]     David's arguments on appeal focus on the notice requirements he identifies in South Dakota's version of the Uniform Probate Code (UPC) and the statutory procedure for terminating joint tenancies. *See* SDCL 29A-1-104(a) (requiring 14-day notice for petitions filed in probate actions requiring a hearing); SDCL ch. 21-44 (establishing procedures and requirements for terminating joint tenancies). David argues that the circuit court overlooked the notice and hearing

requirements and made a final determination of ownership for the joint tenancy land without any opportunity for objections.

[¶12.] In its appellate brief, Dale's estate continues to press its appellate jurisdiction argument, claiming that "David's rights have not been adversely affected" and that his failure to seek reconsideration of the circuit court's order precludes review. On the merits, Dale's estate acknowledges that the court's order terminating the joint tenancy was entered without notice or hearing. However, Dale's estate contends that any failure to comply with these procedural requirements was harmless because they were unnecessary for two asserted reasons: 1) the land passed instantly to Dale after Marlene's death, and the court's order merely confirmed this fact; and 2) Marlene's will gifted the same land to him in any event.

[¶13.] By way of a reply, David challenges the correctness of the immediately-vested argument and the claim that any error was harmless because Dale was the beneficiary of the land under the terms of Marlene's will.

[¶14.] We review two issues in this appeal:

1. Whether the circuit court erred when it granted the petition to terminate the joint tenancy without notice or a hearing.

2. Whether any resulting error was rendered harmless under the circumstances presented in the record.

### *Appellate Jurisdiction*

[¶15.] Before addressing the merits of the issues presented here, we first reaffirm our earlier decision denying the motion to dismiss the appeal. The sustained effort by Dale's estate to challenge appellate jurisdiction centers on its

argument that the circuit court's order terminating the joint tenancy of Marlene and Dale was not a final order. A related and persistent feature of the effort to defeat appellate jurisdiction is the claim by Dale's estate that David should first seek to litigate his claims either in Marlene's probate case or the separate civil action David has commenced against Dale's estate. We think these arguments overlook our decisional law and the nature of a discrete proceeding in a probate action.

[¶16.] Indeed, the claim that we lack jurisdiction because Marlene's probate action remains pending is unmistakably foreclosed by our precedent. In *In re Estate of Geier*, 2012 S.D. 2, ¶ 10, 809 N.W.2d 355, 358, we adopted a "more expansive determination of the finality of probate orders than" our earlier decisions had suggested. Interpreting SDCL 29A-3-107 and the corresponding provision of the UPC, we held that orders determining individual petitions for relief in probate actions can constitute final orders when they dispose of all issues relative to a particular petition and leave nothing for decision. *Id.* ¶ 11, 809 N.W.2d at 358.

[¶17.] Citing persuasive authority from other jurisdictions, we recognized that the drafters of the UPC sought to "avoid the result . . . that no order in a probate case was final until there had been full administration and closing of the estate." *Id.* ¶ 11, 809 N.W.2d at 358 (quoting *In re Estate of Newalla*, 837 P.2d 1373, 1377 (N.M. Ct. App. 1992)). We specifically relied upon the Colorado Supreme Court's explanation relating to the finality of orders resolving individual motions or petitions in probate actions:

> Once a petition is filed, it defines a proceeding. Further
> pleadings relating to the same subject matter, whether labeled

> motions or petitions, are part of the same proceeding. When the subject matter of two petitions overlap, it would generally be appropriate to consider both petitions as belonging to the same proceeding . . . . [A]n order of the probate court is final if it ends the particular action in which it is entered and leaves nothing further for the court pronouncing it to do in order to completely determine the rights of the parties as to that proceeding.

*Geier*, 2012 S.D. 2, ¶ 13, 809 N.W.2d at 359 (quoting *Scott v. Scott*, 136 P.3d 892, 896-97 (Colo. 2006)) (internal citations and quotation marks omitted).

[¶18.] Here, the circuit court's order ended any question relating to the petition to terminate the joint tenancy between Marlene and Dale. The order's express terms provided "that title to the above described property is hereby vested absolutely and in its entirety to Dale A. Petrik, the surviving joint owner[.]" Nothing remained for the circuit court to decide concerning the ex parte petition to terminate the joint tenancy, and therefore, the order was appealable. *Cf. In re Estate of Fox*, 2018 S.D. 35, 911 N.W.2d 746 (finding a lack of appellate jurisdiction to review a circuit court's decision to revoke the initial appointment of a personal representative because the court's ultimate resolution of the appointment issue remained pending).

[¶19.] The additional argument suggesting that David was obligated to seek reconsideration of the circuit court's order is unsound, principally because the order was final under *Geier*. But beyond this, waiting to file a notice of appeal until after an unsuccessful effort to obtain reconsideration may well have precluded review if the circuit court's determination of the motion for reconsideration extended beyond the deadline for filing a notice of appeal. *See* SDCL 15-26A-6 (stating that appeals must generally be taken within 30 days after notice of an order's entry is served).

Requests for reconsideration or relief from an adverse final order under SDCL 15-6-60(b) are not listed among the motions that will toll the time period for filing a notice of appeal. *See Canton Concrete Products Corp. v. Alder*, 273 N.W.2d 120, 123 (S.D. 1978) (holding that a Rule 60(b) motion "does not affect the finality of the judgment; and hence does not toll the time for appeal from the final judgment"). Indeed, SDCL 15-26A-6 lists only motions made for judgment as a matter of law and for a new trial pursuant to SDCL 15-6-50 and SDCL 15-6-59, respectively, as methods by which a party may toll the 30-day appeal period.

[¶20.]    We have appellate jurisdiction to review the circuit court's order terminating the joint tenancy.

### *Notice of the Petition to Terminate the Joint Tenancy and Harmlessness*

[¶21.]    David argues that he should have received notice of the petition to terminate the joint tenancy of Marlene and Dale under the requirements of the UPC and the provisions of the statutory procedure for terminating joint tenancies. As to the UPC requirements, David relies upon SDCL 29A-3-105, which states in relevant part:

> Persons interested in decedents' estates may apply to the clerk of court for determinations in the informal proceedings provided in this article, and may petition the court for orders in formal proceedings within the court's jurisdiction including but not limited to those described in this article. The court may hear and determine formal proceedings and distribution of decedents' estates *after notice* in conformity with § 29A-1-401. Persons notified are bound though less than all interested persons may have been given notice.

(Emphasis added.); *see also* SDCL 29A-1-401 (listing methods of notice).

[¶22.] As the statute indicates, the UPC distinguishes informal from formal proceedings, and their notice requirements, based upon whether a request for relief is directed to a court or the clerk. "Informal proceedings" simply refer to "those conducted *without notice* to interested persons by the clerk of court." SDCL 29A-1-201(22) (emphasis added). "Formal proceedings[,]" by contrast, refer to "proceedings conducted before a judge *with notice* to interested persons." SDCL 29A-1-201(18) (emphasis added); *see also In re Estate of Ricard*, 2014 S.D. 54, ¶ 12, 851 N.W.2d 753, 757 (noting the distinction between informal proceedings and formal proceedings).

[¶23.] Applying these uncomplicated statutory definitions, we conclude the petition to terminate the joint tenancy between Marlene and Dale was a formal proceeding. The petition was filed in Marlene's pending probate action and sought a decision from the court. Dale's estate should have provided notice.

[¶24.] For its part, Dale's estate acknowledges the absence of notice and a hearing, but argues the joint tenancy procedure did not require notice or a hearing or, in any way, implicate the UPC. It argues, alternatively, that any failure to comply with the notice requirements was harmless because Marlene's will gifted the same real estate to Dale that was the subject of the joint tenancy. For several reasons, we are not convinced in either regard.

[¶25.] First, the sweeping argument that the termination procedures for joint tenancies do not implicate the UPC overlooks the unique aspects of this case. The record here suggests that at least some of the land Dale's estate claims was held in a joint tenancy with Marlene was also included as a testamentary gift to Dale in

Marlene's will. Whether or how the land passes to Dale cannot be determined without involving the pending probate action relating to Marlene's will. In fact, Dale's estate seemed to acknowledge as much when it presented the petition to terminate the joint tenancy to the circuit court presiding in this probate action.[4]

[¶26.] In addition, the harmless error argument, which contemplates that the land subject to the joint tenancy is the same land included in Marlene's gift to Dale, rests upon an as-yet-uncertain premise. Although both Marlene's will and the joint tenancy warranty deed describe real property located in the northwest quarter of section 6, the legal descriptions are not identical,[5] and the record does not include sufficient information to establish that the parcel described in Marlene's will is, in fact, the same parcel described in the joint tenancy. For this reason alone, we cannot say that the failure to provide notice was harmless.

[¶27.] Dale's estate offers an additional argument that posits he was immediately vested with the joint tenancy land either by this right of survivorship or the provisions of the UPC. We cannot accept either argument as a basis for affirming the court's order terminating the joint tenancy.

[¶28.] Initially, the claim that Dale's survivorship right was entirely self-executing upon filing Marlene's death certificate is not consistent with the provisions of SDCL chapter 21-44, which describe the procedure for terminating

---

4. Doing so, Dale's estate now claims, was "a mistake."

5. Marlene's will described the specific gift to Dale as "Lots 3, 4, & 5 and the Southeast Quarter of the Northwest Quarter" of section 6. The joint tenancy deed described the real estate as "[t]he Northwest Quarter, less Lot H-1" of section 6.

joint tenancies to real property. Although a surviving joint tenant can record with the register of deeds a certified copy of a death certificate for the deceased joint tenant and an affidavit containing a legal description of the subject property, this serves only as "prima facie evidence" of the joint tenancy's termination. SDCL 21-44-2. The procedure set out in SDCL 21-44-2 is not the court adjudicated determination terminating "all right, title, interest, lien, or claim" of the joint tenant that Dale's estate sought in its petition. *See* SDCL 21-44-19 (describing the effect of a court's judgment terminating a joint tenancy).[6]

[¶29.]        The argument that Dale was immediately vested with title to the land Marlene specifically gifted to him in her will is also unpersuasive. The claim is based upon SDCL 29A-3-101, which provides, in part, that "[u]pon the death of a person, that person's real and personal property devolves to the persons to whom it is devised by will . . . ." However, the statute does not authorize immediate and unconditional transfer as Dale's estate suggests. Instead, SDCL 29A-3-101 states that the devolves-upon-death text is "subject to" a number of restrictions, including "administration" of the estate. We have recognized that this qualifying language serves to temper the provision upon which Dale's estate relies. *See In re Estate of Laue*, 2010 S.D. 80, ¶ 21, 790 N.W.2d 765, 770 (per curiam) (holding that reading the devolves-at-death text of SDCL 29A-3-101 in absolute terms would "violat[e] rules of statutory construction"); *In re Estate of Olson*, 2008 S.D. 4, ¶ 15, 744

---

6.        A different rule applies where the decedent's spouse is the sole surviving joint tenant. *See* SDCL 21-44-27. In those instances, the joint tenancy may be terminated "by furnishing the register of deeds" with an affidavit complying with the requirements of SDCL 21-44-27 and attaching a certified copy of the death certificate.

N.W.2d 555, 560 (recognizing the decedent's specific real estate devise that vested in the beneficiary at the time of the decedent's death was "subject only to the probate of the estate" (citing *In re Estate of Roehr*, 2001 S.D. 85, ¶ 6, 631 N.W.2d 600, 602)).

[¶30.]     Here, David asserts that "sometime after the 2005 [joint tenancy] deed, Dale agreed to relinquish his joint tenancy interest, but for some reason a record of this relinquishment was never filed with the Register of Deeds." The claim may ultimately be successful, or not, and we express no opinion on the merits of the issue. We hold simply that David as an interested person and the personal representative of Marlene's estate must have an opportunity to test the strength of the argument before the circuit court determines, as its order indicates, "that title to the above described property is hereby vested absolutely and in its entirety to Dale A. Petrik[.]"

[¶31.]     We therefore vacate the court's order terminating the joint tenancy and remand the case for further proceedings.

[¶32.]     JENSEN, Chief Justice, and DEVANEY and MYREN, Justices, concur.

[¶33.]     KERN, Justice, deeming herself disqualified, did not participate.