#30194-a-MES
**2024 S.D. 23**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE ESTATE OF
NEIL WILLIAM SMEENK,
Deceased.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
BUTTE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MICHAEL W. DAY
Judge

* * * *

KATELYN A. COOK
TALBOT WIECZOREK of
Gunderson, Palmer, Nelson
   & Ashmore, LLP
Rapid City, South Dakota            Attorneys for appellant Denise
                                            L. Schipke-Smeenk.


LORA A. WAECKERLE
JOHN W. BURKE
KIMBERLY S. PEHRSON of
Thomas, Braun, Bernard
   & Burke, LLP
Rapid City, South Dakota            Attorney for appellee Ryan
                                            William Smeenk.

* * * *

ARGUED
MAY 24, 2023
OPINION FILED **04/17/24**

#30194

SALTER, Justice

[¶1.]  Following our decision in *In re Estate of Smeenk (Smeenk I)*, 2022 S.D. 41, 978 N.W.2d 383, Denise Schipke-Smeenk filed a motion for partial summary judgment relating to her breach of contract claim against the estate of her deceased husband, Neil Smeenk.  We considered the same breach of contract claim in *Smeenk I* and affirmed the circuit court's decision to deny the claim after a court trial.  In its current iteration, Denise has changed the type of relief she is requesting; she is now seeking money damages for the breach instead of the specific performance remedy she had pursued unsuccessfully in *Smeenk I*.  Neil's son opposed Denise's partial summary judgment motion, arguing that our decision in *Smeenk I* resolved Denise's claim against the estate and precluded any further effort to change or refine the claim under principles of res judicata.  The circuit court agreed and concluded that Denise was barred from litigating her breach of contract claim against Neil's estate.  Denise appeals, and we affirm.

### Factual and Procedural Background

[¶2.]  As discussed in *Smeenk I*, Denise and Neil executed mutual and reciprocal wills in 2017.  The couple also executed an agreement that provided neither would revoke or amend their 2017 wills without the other's written consent (the Agreement).

[¶3.]  After their relationship became critically strained, Denise and Neil separated in March 2019.  A month later, Neil executed a new will without Denise's consent, which disinherited her to the extent allowed under South Dakota law and

-1-

named his children from his earlier marriage, Ryan Smeenk and Brandy Smeenk Mooney, as the primary beneficiaries. Neil passed away shortly thereafter.

[¶4.]    Denise filed a petition for formal, unsupervised probate concerning the 2017 will, and Ryan filed a competing petition to probate the 2019 will. At the subsequent hearing before the circuit court, Denise argued that the Agreement should be specifically enforced and that the 2017 will should be probated.

[¶5.]    However, the circuit court determined that Neil's more recent 2019 will was valid and should be admitted into probate. The court concluded that the couple's Agreement did not render Neil's 2017 will irrevocable, though it may subject his estate to liability. The court appointed Denise to serve as the personal representative of Neil's estate, rather than Ryan. Neither party appealed either of these two decisions.

[¶6.]    Denise later filed a motion for approval of a creditor claim in which she proposed to distribute Neil's estate according to the terms of his 2017 will. In her supporting memorandum of law, Denise argued that the Agreement was a valid contract that should be specifically enforced. Denise did *not* argue, even alternatively, that her claim under the Agreement could or should be remedied with money damages.

[¶7.]    Ryan opposed the motion, claiming it was untimely. He also questioned whether Denise's claim for enforcement of the Agreement under the equitable remedy of specific performance was cognizable as a creditor claim in a probate action, particularly in the absence of an evidentiary hearing.

[¶8.]     The circuit court conducted a court trial regarding Denise's claim in December 2020, complete with testimony from six witnesses and the admission of sixteen exhibits.  The court took the matter under advisement and directed the parties to submit simultaneous proposed findings of fact and conclusions of law.  Notably, neither the evidence at trial nor Denise's proposed findings and conclusions addressed proof of the inadequacy of money damages as a component of Denise's claim for specific performance.[1]  Instead, Denise's argument at trial and her proposed findings and conclusions described specific performance as a remedy that was generally available in these sorts of breach of contract cases.

[¶9.]     The circuit court agreed with Ryan that Denise's creditor claim was untimely and further determined that Denise failed to establish that she was entitled to specific performance by the requisite clear and convincing evidentiary standard.[2]  The court did not decide the question of whether Neil breached the Agreement.

[¶10.]     A little over a week after the circuit court's decision denying Denise's claim, she filed what was styled as a "Statement of Claim" (the Post-Decision

1.     For example, the contract for deed was not admitted into evidence, so there was no information about the term or the amount of the payments.  Nor was there evidence of Denise's life expectancy or an appropriate discount rate to calculate the present value of the future payments.  The balance due under the contract for deed was introduced as part of the inventory, but there was no effort to assess the amount or adequacy of money damages.

2.     The circuit court's specific performance decision was two-fold: (1) Denise did not demonstrate that the circumstances supported the equitable remedy of specific performance; and (2) Denise did not sustain her burden to demonstrate the inadequacy of money damages as a predicate to the remedy of specific performance.

Claim) in which she again "request[ed] specific performance of the decedent's contractual obligations under the [Agreement]." However, for the first time, Denise referenced the possibility of money damages as an alternative to specific performance "if an amount can be calculated[.]"

[¶11.] Shortly thereafter, Denise filed her first appeal to this Court. In addition to challenging the circuit court's decision that her claim for specific performance was untimely, Denise also argued that "the trial court erred in determining [she] failed to establish she has an inadequate remedy at law." Denise contended that she should be entitled to specific performance because she "established that she lack[ed] an adequate remedy at law" and that "it [is] impossible to ascertain what [Denise's] Estate might look like at the time of her death, and thus, impossible to ascertain what her monetary damages would be as a result of Neil's breach."

[¶12.] In our *Smeenk I* opinion, we reversed the circuit court's decision that Denise's claim was untimely, but we affirmed the court's determination that Denise had not sustained her burden to demonstrate that she was entitled to specific performance. *Smeenk I*, 2022 S.D. 41, ¶ 41, 978 N.W.2d at 396. Although the circuit court had not reached the breach question, we concluded we could address the merits of the denial of Denise's claim through the lens of the specific performance remedy which had been fully briefed and argued by the parties. *Id.* ¶ 32, 978 N.W.2d at 393–94.[3]

---

3. Denise suggests that the question relating to Neil's breach of the Agreement was reserved for future proceedings, citing our statement in *Smeenk I* that

(continued . . .)

[¶13.]      Ultimately, we affirmed the circuit court's denial of specific performance by agreeing with the court's failure-of-proof analysis:

> Denise made no effort to show that she was unable to calculate the value of the remaining payments under the contract for deed, based upon her life expectancy, or that she would otherwise be unable to present a claim for damages under the circumstances as they existed. The record also contains the inventory providing a monetary value for Neil's one-half interest remaining in the contract for deed. Under these circumstances, the circuit court could appropriately conclude that Denise failed to allege or prove that she did not have an adequate remedy at law.

*Id.* ¶ 39, 978 N.W.2d at 395.

[¶14.]      Our *Smeenk I* opinion did not include any remand instructions, and our judgment remitting the case back to the circuit court stated only that "this cause . . . is hereby remanded to said Circuit Court for further proceedings according to law and the decision of this Court." In Denise's view, she believed she could continue to litigate her breach of contract claim against the estate, now under the new theory that she could obtain money damages.

[¶15.]      With the evidentiary record unchanged since the trial regarding the breach of contract claim and *Smeenk I*, Denise sought partial summary judgment on the issue of Neil's breach. Ryan, however, viewed our *Smeenk I* opinion as the end

---

(. . . continued)
      "the circuit court specifically reserved ruling on the issues of enforceability and breach of the Agreement." *Smeenk I*, 2022 S.D. 41, ¶ 32, 978 N.W.2d at 393. We think Denise reads too much into the sentence that appears to be a reference to the circuit court's decision to focus on the means by which the Agreement was enforceable and not the Agreement's validity. Regardless, our reference to the circuit court's statement should not be viewed as holding that the question of enforceability would necessarily be determined at a later date.

to Denise's creditor claim and opposed the post-trial, post-appeal summary judgment motion. In his response to Denise's motion for partial summary judgment, Ryan advanced three principal arguments to support his claim that Denise should not be able to "reverse-course and seek money damages[:]" (1) money damages are barred by res judicata following *Smeenk I*, (2) Denise waived the money damages claim when not offering any evidence or proposed findings regarding money damages at trial, and (3) "[Denise] is bound by her prior and numerous [judicial] admissions that it was 'impossible' to determine a monetary award."[4]

[¶16.]     The circuit court granted Denise's motion for partial summary judgment on the question of Neil's breach because "the record does not reflect any genuine issue of material fact related to the validity of the [Agreement] or its breach." However, the court agreed with Ryan's view of *Smeenk I*, and it preempted any further effort by Denise to litigate her creditor claim. The court concluded that our decision regarding the availability of specific performance in *Smeenk I* precluded Denise from later seeking money damages. Applying the claim preclusion variety of res judicata, the court determined that Denise could have alternatively raised her request for money damages in *Smeenk I* but did not. In the court's view, Denise had every opportunity to litigate her breach of contract claim when her creditor claim was tried to the court, including the chance to put on proof of money damages. The court also concluded that Denise was judicially estopped

---

4.     Ryan filed a motion to distribute the estate according to Neil's 2019 will, which the circuit court ordered held in abeyance.

from claiming money damages given her prior representations about the insufficiency and uncertainty of money damages.

[¶17.] Denise again appeals the circuit court's ruling denying her breach of contract claim against Neil's estate. She argues that the court erred by precluding her money damages claim under the doctrine of res judicata and the separate doctrine of judicial estoppel based upon Denise's prior judicial admissions.[5]

### Analysis and Decision

### *Res judicata and unsupervised probate proceedings*

[¶18.] Whether applying claim or issue preclusion, res judicata is "premised upon two maxims: a person should not be twice vexed for the same cause and public policy is best served when litigation has a repose." *Healy Ranch, Inc. v. Healy*, 2022 S.D. 43, ¶ 58, 978 N.W.2d 786, 802 (quoting *Bank of Hoven v. Rausch*, 449 N.W.2d 263, 266 (S.D. 1989)). We analyze res judicata claims using our well-established four-part test:

> (1) the issue in the prior adjudication must be identical to the present issue, (2) there must have been a final judgment on the merits in the previous case, (3) the parties in the two actions must be the same or in privity, and (4) there must have been a full and fair opportunity to litigate the issues in the prior adjudication.

*Id.* ¶ 42, 978 N.W.2d at 799.[6]

---

5. Ryan does not challenge the circuit court's determination that Neil breached the agreement not to revoke wills.

6. "A decision on the question of the application of res judicata is reviewed de novo." *Nemec v. Goeman*, 2012 S.D. 14, ¶ 11, 810 N.W.2d 443, 446.

[¶19.]     When utilizing the res judicata test in the claim preclusion context, we do not view the first element in a way that requires strict construction of an "issue." Instead, we consider whether the issues in the two cases address the same wrong sought to be redressed. *Id.* ¶ 45. The alleged wrong in this case, as in *Smeenk I*, is the claim relating to Neil's breach of the Agreement, and we have no difficulty concluding that the first element of the res judicata test is satisfied.

[¶20.]     Leaving the second res judicata element to the side for a moment, we also conclude that the third element is unquestionably met here. The interested parties in this appeal are identical to those of the first appeal.

[¶21.]     And as to the fourth element, the record establishes that Denise had a complete and fair opportunity to litigate her breach of contract claim against Neil's estate in the prior proceeding. Indeed, the circuit court conducted a trial on the claim, which featured a fully developed evidentiary record with testimony and exhibits.

[¶22.]     The requirement of finality described in the second element of the res judicata test merits a more comprehensive discussion because ordinarily the earlier adjudication arises from a separate action. But to explain why this is not necessarily true in all cases, we discuss the finality requirement separately.

### Res judicata finality

[¶23.]     As it concerns final orders, unsupervised probate actions represent a special class of cases in the sense that a single action can contain multiple, discrete "proceeding[s]," each of which results in a final order. *In re Estate of Petrik*, 2021 S.D. 49, ¶ 17, 963 N.W.2d 766, 770 (citing *In re Estate of Geier*, 2012 S.D. 2, ¶ 13,

809 N.W.2d 355, 359).[7]  The scope of a probate proceeding includes an initial petition addressing a particular subject of the probate action and any additional pleadings, motions, and petitions, however denominated, that relate to the same subject matter.  *Id.*  An order that resolves a request for relief ends the proceeding and is a final order which may be appealed as a matter of right.  *Id.* (citing *Geier*, 2012 S.D. 2, ¶ 13, 809 N.W.2d at 359).

[¶24.]     In an earlier, pre-*Geier* effort to distinguish res judicata from the similar law of the case doctrine, we noted that, "Where successive appeals are taken in the same case there is no question of res judicata, because the same suit, and not a new and different one, is involved."  *In re Estate of Siebrasse (Siebrasse IV)*, 2006 S.D. 83, ¶ 16, 722 N.W.2d 86, 90 (quoting *Fla. Dep't of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001)).[8]  But our holding in *Geier* changed the idea that successive appeals within the same case involve the "same suit."

---

7.    We have not expressed an opinion on whether the *Geier* final order rule applies to orders made within a *supervised* probate action.  *Compare* SDCL 29A-3-107 ("Unless supervised administration as described in Part 5 is involved, each proceeding before the court or clerk is independent of any other proceeding involving the same estate[.]"), *and* SDCL 29A-3-501 ("Supervised administration is a single in rem proceeding to secure complete administration and settlement of a decedent's estate under the continuing authority of the court, which extends until entry of an order approving distribution of the estate and discharging the personal representative or other order terminating the proceeding.").

8.    In *Siebrasse IV*, we distinguished res judicata from the "related doctrine of 'law of the case'" explaining "that a question of law decided by the supreme court on a former appeal becomes the law of the case, in all its subsequent stages, and will not ordinarily be considered or reversed on a second appeal when the facts and the questions of law presented are substantially the same."  2006 S.D. 83, ¶ 16, 722 N.W.2d at 90.  However, unlike res judicata, most authorities hold that the law of the case doctrine implicates only issue

(continued . . .)

[¶25.] In *Geier*, "we adopted a 'more expansive determination of the finality of probate orders than' our earlier decisions had suggested." *Petrik*, 2021 S.D. 49, ¶ 16, 963 N.W.2d at 770 (quoting *Geier*, 2012 S.D. 2, ¶ 10, 809 N.W.2d at 358). By designating orders disposing of an unsupervised probate "proceeding" as final, we authorized appeals as a matter of right for otherwise interlocutory orders to avoid delaying appellate review until "there had been full administration and closing of the estate." *Petrik*, 2021 S.D. 49, ¶ 17, 963 N.W.2d at 770 (quoting *Geier*, 2012 S.D. ¶ 11, 809 N.W.2d at 358).

[¶26.] *Geier*-type finality brings with it not simply the ability to obtain appellate review as a matter of right. It also implicates the claim preclusion concepts of res judicata. If it were otherwise, *Geier's* exceptional final-order rule could not be justified because it would foster successive appeals of individual orders without any consequence or durable effect. Parties would be free to recast arguments relating to the same original request for relief in different terms, limited only by their creativity. Though we have not confronted this issue regarding the preclusive impact of these final orders occurring within the same case, at least one other jurisdiction has endorsed the idea that these "*Geier*-type orders" are final for purposes of res judicata. *See In re Estate of Starcher*, 447 N.W.2d 293, 296–97 (N.D. 1989) (acknowledging the applicability of res judicata for orders disposing of

---

(. . . continued)

preclusion and not the broader preclusive concept of claim preclusion. *See* 13 Charles Alan Wright & Arther R. Miller, *Federal Practice & Procedure* § 4478 (3d ed.) ("Actual decision of an issue is required to establish the law of the case. Law of the case does not reach a matter that was not decided.").

unsupervised probate proceedings but declining to find preclusion because the later claim was not sufficiently related to the earlier proceeding).[9]

[¶27.] Beyond this, our statement in *Siebrasse IV* about the availability of res judicata in successive appeals may require some clarification. The rule was accurate and applicable in *Siebrasse IV*, but it is not as universal as we may have suggested.

[¶28.] There is no categorical prohibition upon final orders in successive appeals within the same case having preclusive effect under res judicata principles. And though, as the Restatement (Second) of Judgments states, finality for appellate review is not necessarily the same as finality for purposes of res judicata, it can be:

> [W]hen res judicata is in question a judgment will ordinarily be considered final in respect to a claim (or a separable part of a claim, see Comment e below) if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court, short of any steps by way of execution or enforcement that may be consequent upon the particular kind of adjudication.

Restatement (Second) of Judgments § 13, cmt. b. (1982).[10]

[¶29.] So, "[a] judgment may be final in a res judicata sense as to a part of an action although the litigation continues as to the rest." *Id.* cmt e. For example, "in

---

9. *See also In re Estate of Bagley*, 522 S.E.2d 281, 283 (Ga. Ct. App. 1999) (applying claim preclusion res judicata to prevent party from pursuing a subsequent petition to be named a successive executor under new theories).

10. We apply a similar general rule for determining the finality of a judgment for purposes of appeal. *See Knecht v. Evridge*, 2020 S.D. 9, ¶ 42, 940 N.W.2d 318, 331 (relying upon "the United States Supreme Court's perception of a final judgment as 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment'" (quoting *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 199, 108 S. Ct. 1717, 1720, 100 L. Ed. 2d 178 (1988)).

a bankruptcy or receivership proceeding the claim of a particular creditor may be finally adjudicated although the proceeding is not closed." *Id.* The Restatement also identifies orders which are entered as final judgments under Rule 54(b) of the Federal Rules of Civil Procedure as potentially final for res judicata purposes "on particular claims as they are adjudicated, with the action continuing as to the remaining claims." *Id.*

[¶30.]     *Geier* final orders are similar. Our decision in *Geier* was based upon useful text contained in SDCL 29A-3-107 which specifically states that "each proceeding before the court or clerk is independent of any other proceeding involving the same estate[.]" 2012 S.D. 2, ¶ 12, 809 N.W.2d at 358. Our specific holding was that an order denying an heir's petition for supervised administration of his mother's estate and for removal of the personal representative was appealable because "the court's order resolved all the issues." *Id.* ¶ 15, 809 N.W.2d at 359.[11]

[¶31.]     Here, Denise's motion to approve her claim and administer Neil's estate under the terms of his 2017 will was a single proceeding. The circuit court's order denying it under two bases—timeliness and the court's determination that Denise was not entitled to specific performance—was a final order that we treated as appealable as a matter of right. And although we reversed the court's untimeliness decision in *Smeenk I*, we agreed with the court's determination that

---

11.    Though it is not central to our analysis of *Geier's* impact upon the earlier-decided *Siebrasse IV*, we note that the appellate decision in *In Estate of Siebrasse*, 2004 S.D. 46, 678 N.W.2d 822 (*Siebrasse III*) that was at issue in *Siebrasse IV* did not conclude the issue of apportioning the proceeds from a tax refund among the beneficiaries but, rather, left that task for the circuit court on remand.

Denise had not established she was entitled to specific performance because she "failed to allege or present evidence of an essential element for specific performance[.]" 2022 S.D. 41, ¶ 40, 978 N.W.2d at 396. Nothing prevented Denise from seeking money damages alternatively, as she belatedly sought to do in her Post-Decision Claim.[12]

[¶32.] Therefore, the effect of *Smeenk I* was to affirm the circuit court's denial of Denise's claim, albeit on only one of the two bases identified by the court. Therefore, there was no error to correct on remand, and the case was returned to the circuit court without any instructions that would have extended the proceeding relating to Denise's breach of contract claim.[13] In res judicata terms, *Smeenk I* was a final judgment on the merits, and it is unnecessary to address the issue of judicial estoppel.

[¶33.] We affirm.

[¶34.] JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.

---

12. Denise argues that the post-decision claim she filed after the evidentiary hearing preserved an alternative claim for damages prior to the *Smeenk I* decision. We disagree. The document was filed after the trial on Denise's claim and was never presented to the circuit court. And in any event, the principal flaw with Denise's late effort to claim damages is not simply a question of notice, but rather the failure of proof, as we have noted. At the trial on her claim, Denise did not prove damages caused by Neil's breach of the Agreement any more than she proved the damages were inadequate. In fact, even Denise's post-decision claim equivocated on the prospect that damages could even be calculated, stating, "In the alternative, if an amount can be calculated, Claimant requests the present value of the claim."

13. Denise argues that "[h]ad this Court actually found that [her] claim was decided on the merits . . . there would have been no need . . . to remand . . . ." However, this view overlooks the need to return the case to the circuit court for completion of the probate action involving Neil's 2019 will.